## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

ROBERT KNERR, on behalf of himself and those similarly situated

      Plaintiff,

vs.

BOULDER BJ, LLC, a Colorado Limited Liability Company,
BLACKJACK ENTERPRISES, LLC, a Michigan Limited Liability Company,
ASKAR BRANDS, LLC, a Michigan Limited Liability Company,
ASKAR MANAGEMENT GROUP, LLC, a Michigan Limited Liability Company,
ASKAR FOODS, LLC, a Michigan Limited Liability Company,
ASKAR HOLDINGS, LLC, a Michigan Limited Liability Company,
ASKAR MANAGEMENT, LLC, a Michigan Limited Liability Company,
ASKAR GROUP, LLC, a Michigan Limited Liability Company,
CASEY ASKAR,
SAM ASKAR,
JOHN DOE CORP. 1-10, and
JOHN DOE 1-10,

      Defendants.

---

## CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

---

## Introductory Statement

1.    Plaintiff Robert Knerr, on behalf of himself and all similarly-situated individuals, brings this action against Boulder BJ, LLC; Blackjack Enterprises, LLC; Askar Brands, LLC; Askar Management Group, LLC; Askar Foods, LLC; Askar Holdings, LLC; Askar Management, LLC; Askar Group, LLC; Casey Askar and Sam Askar; John Doe Corp. 1-10 and John Doe 1-10 based on Defendants' willful failure to compensate Plaintiff

and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Colorado Wage Claim Act ("CWCA"), C.R.S. § 8-4-101, *et seq.*, and the Colorado Minimum Wage Act ("CMWA"), C.R.S. § 8-6-101, *et seq.*

2.      Defendants operate approximately 42 Blackjack Pizza restaurants in Colorado, Wyoming, Montana, Arizona, Utah, and Florida (the "Blackjack stores").

3.      Defendants also own and operate a number of other food chains, including Papa Romano's, Papa's Pizza, Breadeaux Pizza, and Mr. Pita.

4.      Defendants repeatedly and willfully violated the FLSA and Colorado law by failing to adequately reimburse delivery drivers for their delivery-related and other work-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

5.      Defendants also repeatedly and willfully violated the FLSA and Colorado law by requiring them to work dual jobs—one for which they receive tips, and another for which they do not receive tips—but paying them at a tipped wage rate for all hours worked.

6.      All delivery drivers at the Defendants' stores, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

7.      Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

8.      Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers in Colorado pursuant to Fed. R. Civ. P. 23, to remedy violations of Colorado wage and hour law by Defendants.

### I.      Jurisdiction and Venue

9.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims (First Claim for Relief).

10.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims (Second and Third Claims for Relief).

11.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district and a substantial part of the events giving rise to the claims herein occurred in this district.

### II.     Parties

**Plaintiff**

**Robert Knerr**

12.     Robert Knerr worked for Defendants in Boulder, Colorado.

13.     Robert Knerr is an "employee" of all of the Defendants as defined in the FLSA and Colorado law.

14.     Robert Knerr has given written consent to join this action.

**Defendants**

15.     Defendants form a single employer or single integrated enterprise as they share functional interrelation of operations, common management, centralized control of labor relations, and common ownership.

16.     Defendants make up part of Askar Brands, which owns and operates a number of food chain brands.

17.     Defendants operate the Blackjack stores out of their headquarters located at 8101 Richardson Road, Suite 101, Commerce Twp., MI 48390.

18.     Alternatively, Defendants constitute joint employers as they co-determine matters governing essential terms and conditions of employment, share the ability to hire, fire and discipline employees, share the ability to affect compensation and benefits, and share authority to direct and supervise employees' performance.

19.     During all relevant times, Defendants permitted employees to transfer or be shared by and between the Blackjack stores without retraining.

20.     Defendants have suffered or permitted Plaintiffs and other delivery drivers to work under the circumstances set forth below.

21.     Each of the Defendants have control or custody of the employment of Plaintiffs and similarly situated employees, and the place where Plaintiffs and similarly situated employees worked.

22.     Each of the Defendants had control over Plaintiffs' and similarly situated delivery drivers' working conditions.

**Boulder BJ, LLC**

23.     Defendant Boulder BJ, LLC is a Colorado limited liability company with its principal place of business at 8101 Richardson Road, Suite 101, Commerce Twp., MI 48390.

24.     Boulder BJ, LLC is a wholly owned subsidiary of Askar Brands, LLC.

4

25.    Boulder BJ, LLC is the corporate entity that appears on the employee handbook provided to Plaintiff while he worked at Blackjack Pizza.

26.    Boulder BJ, LLC is headquartered at the same location as Askar Brands, 8101 Richardson Road, Suite 101, Commerce Twp., MI 48390.

27.    8101 Richardson Road, Suite 101, Commerce Twp., MI 48390 is the address that appears on the paystubs provided to Plaintiff for work he completed at Blackjack Pizza.

28.    Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Boulder BJ, LLC is owned and operated by Casey and Sam Askar.

29.    Boulder BJ, LLC was incorporated by "Kousay Askar," which, upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, is Sam Askar.

30.    Boulder BJ, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

31.    Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Boulder BJ, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

5

32.     Boulder BJ, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

33.     At all relevant times, Boulder BJ, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

34.     Boulder BJ, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

35.     At all relevant times, Boulder BJ, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

36.     Boulder BJ, LLC's gross revenue exceeds $500,000 per year.

**Blackjack Enterprises, LLC**

37.     Defendant Blackjack Enterprises, LLC is a Michigan limited liability company with its principal place of business at 8101 Richardson Road, Suite 101, Commerce Twp., MI 48390.

38.     Blackjack Enterprises, LLC is a wholly owned subsidiary of Askar Brands, LLC.

39.     Blackjack Enterprises, LLC is headquartered at the same location as Askar Brands, 8101 Richardson Road, Suite 101, Commerce Twp., MI 48390.

6

40.    8101 Richardson Road, Suite 101, Commerce Twp., MI 48390 is the address that appears on the paystubs provided to Plaintiff for work he completed at Blackjack Pizza.

41.    Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Blackjack Enterprises, LLC is owned and operated by Casey and Sam Askar.

42.    Blackjack Enterprises, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

43.    Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Blackjack Enterprises, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

44.    Blackjack Enterprises, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

45.    At all relevant times, Blackjack Enterprises, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

46.    Blackjack Enterprises, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

47.    At all relevant times, Blackjack Enterprises, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

48.    Blackjack Enterprises, LLC's gross revenue exceeds $500,000 per year.

**Askar Brands, LLC**

49.    Defendant Askar Brands, LLC is a Michigan limited liability company with its principal place of business at 8101 Richardson Road, Suite 101, Commerce Twp., MI 48390.

50.    Askar Brands, LLC owns and operates a number of food chain brands, including Blackjack Pizza, Papa Romano's, Papa's Pizza, Breadeaux Pizza, Mr. Pita, Stucchi's, and CJ's Brewing Company through various operating entities.

51.    Askar Brands, LLC is owned and operated by Casey and Sam Askar.

52.    Askar Brands, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

53.    Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Askar Brands, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

8

54.    Askar Brands, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

55.    At all relevant times, Askar Brands, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

56.    Askar Brands, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

57.    At all relevant times, Askar Brands, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

58.    Askar Brands, LLC's gross revenue exceeds $500,000 per year.

**Askar Management Group, LLC**

59.    Defendant Askar Management Group, LLC is a Michigan limited liability company with its principal place of business at 8101 Richardson Road, Suite 101, Commerce Twp., MI 48390.

60.    Askar Management Group, LLC operates under the Askar Brands umbrella.

61.    As part of Askar Brands, Askar Management Group, LLC owns and operates a number of food chain brands, including Blackjack Pizza, Papa Romano's, Papa's Pizza, Breadeaux Pizza, Mr. Pita, Stucchi's, and CJ's Brewing Company through various operating entities.

62.    Askar Management Group, LLC is owned and operated by Casey and Sam Askar.

63.    Askar Management Group, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

64.    Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Askar Management Group, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

65.    Askar Management Group, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

66.    At all relevant times, Askar Management Group, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

67.    Askar Management Group, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

68.    At all relevant times, Askar Management Group, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

69.     Askar Management Group, LLC's gross revenue exceeds $500,000 per year.

**Askar Foods, LLC**

70.     Defendant Askar Foods, LLC is a Michigan limited liability company with its principal place of business at 8101 Richardson Road, Suite 101, Commerce Twp., MI 48390.

71.     Askar Foods, LLC operates under the Askar Brands umbrella.

72.     As part of Askar Brands, Askar Foods, LLC owns and operates a number of food chain brands, including Blackjack Pizza, Papa Romano's, Papa's Pizza, Breadeaux Pizza, Mr. Pita, Stucchi's, and CJ's Brewing Company through various operating entities.

73.     Askar Foods, LLC is owned and operated by Casey and Sam Askar.

74.     Askar Foods, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

75.     Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery,  Askar Foods, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

76.     Askar Foods, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

77.     At all relevant times, Askar Foods, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

78.     Askar Foods, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

79.     At all relevant times, Askar Foods, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

80.     Askar Foods, LLC's gross revenue exceeds $500,000 per year.

**Askar Holdings, LLC**

81.     Defendant Askar Holdings, LLC is a Michigan limited liability company with its principal place of business at 8101 Richardson Road, Suite 101, Commerce Twp., MI 48390.

82.     Askar Holdings, LLC operates under the Askar Brands umbrella.

83.     As part of Askar Brands, Askar Holdings, LLC owns and operates a number of food chain brands, including Blackjack Pizza, Papa Romano's, Papa's Pizza, Breadeaux Pizza, Mr. Pita, Stucchi's, and CJ's Brewing Company through various operating entities.

84.     Askar Holdings, LLC is owned and operated by Casey and Sam Askar.

85.     Askar Holdings, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

86.     Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Askar Holdings, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

87.     Askar Holdings, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

88.     At all relevant times, Askar Holdings, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

89.     Askar Holdings, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

90.     At all relevant times, Askar Holdings, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

91.     Askar Holdings, LLC's gross revenue exceeds $500,000 per year.

**Askar Management, LLC**

92.     Defendant Askar Management, LLC is a Michigan limited liability company with its principal place of business at 8101 Richardson Road, Suite 101, Commerce Twp., MI 48390.

93.     Askar Management, LLC operates under the Askar Brands umbrella.

94.     As part of Askar Brands, Askar Management, LLC owns and operates a number of food chain brands, including Blackjack Pizza, Papa Romano's, Papa's Pizza, Breadeaux Pizza, Mr. Pita, Stucchi's, and CJ's Brewing Company through various operating entities.

95.     Askar Management, LLC is owned and operated by Casey and Sam Askar.

96.     Askar Management, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

97.     Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Askar Management, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

98.     Askar Management, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

99.     At all relevant times, Askar Management, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not

limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

100.    Askar Management, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

101.    At all relevant times, Askar Management, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

102.    Askar Management, LLC's gross revenue exceeds $500,000 per year.

**Askar Group, LLC**

103.    Defendant Askar Group, LLC is a Michigan limited liability company with its principal place of business at 8101 Richardson Road, Suite 101, Commerce Twp., MI 48390.

104.    Askar Group, LLC operates under the Askar Brands umbrella.

105.    As part of Askar Brands, Askar Group, LLC owns and operates a number of food chain brands, including Blackjack Pizza, Papa Romano's, Papa's Pizza, Breadeaux Pizza, Mr. Pita, Stucchi's, and CJ's Brewing Company through various operating entities.

106.    Askar Group, LLC is owned and operated by Casey and Sam Askar.

107.    Askar Group, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

108.    Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Askar Group, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

109.    Askar Group, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

110.    At all relevant times, Askar Group, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

111.    Askar Group, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

112.    At all relevant times, Askar Group, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

113.    Askar Group, LLC's gross revenue exceeds $500,000 per year.

**John Doe Corp. 1-10**

114.    Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Defendants own and operate other entities and/or limited liability companies that also qualify as Plaintiff's "employer" under the FLSA and Colorado law.

16

115.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Casey Askar**

116.    Casey Askar is the president and chairman of Askar Brands.

117.    Casey Askar is individually liable to the Blackjack delivery drivers under the definitions of "employer" set forth in the FLSA and Colorado law because he owns and operates the Blackjack stores, serves as a manager of the Defendant entities, ultimately controls significant aspects of the Blackjack stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees.  29 U.S.C. § 203(d).

118.    At all relevant times, by virtue of his role as president and chairman of Askar Brands, Casey Askar has had financial control over the operations at each of the Blackjack stores.

119.    At all relevant times, by virtue of his role as president and chairman of Askar Brands, Casey Askar has a role in significant aspects of the Blackjack stores' day to day operations.

120.    At all relevant times, by virtue of his role as president and chairman of Askar Brands, Casey Askar has had control over the Blackjack stores' pay policies.

121.    At all relevant times, by virtue of his role as president and chairman of Askar Brands, Casey Askar has had power over personnel and payroll decisions at the Blackjack stores, including but not limited to influence of delivery driver pay.

122.    At all relevant times, by virtue of his role as president and chairman of Askar Brands, Casey Askar has had the power to hire, fire and discipline employees, including delivery drivers at Blackjack stores.

123.    At all relevant times, by virtue of his role as president and chairman of Askar Brands, Casey Askar has had the power to stop any illegal pay practices that harmed delivery drivers at the Blackjack stores.

124.    At all relevant times, by virtue of his role as president and chairman of Askar Brands, Casey Askar has had the power to transfer the assets and liabilities of the Blackjack stores.

125.    At all relevant times, by virtue of his role as president and chairman of Askar Brands, Casey Askar has had the power to declare bankruptcy on behalf of the Blackjack stores.

126.    At all relevant times, by virtue of his role as president and chairman of Askar Brands, Casey Askar has had the power to enter into contracts on behalf of each of the Blackjack stores.

127.    At all relevant times, by virtue of his role as president and chairman of Askar Brands, Casey Askar has had the power to close, shut down, and/or sell each of the Blackjack stores.

128.    At all relevant times, by virtue of his role as president and chairman of Askar Brands, Casey Askar had authority over the overall direction of each of Blackjack stores and was ultimately responsible for their operations.

129.    The Blackjack stores function for Casey Askar's profit.

130.    Casey Askar has influence over how the Blackjack stores can run more profitably and efficiently.

**Sam Askar**

131.    Sam Askar is the Chief Executive Officer of Askar Brands.

132.    Sam Askar is individually liable to the Blackjack delivery drivers under the definitions of "employer" set forth in the FLSA and Colorado law because he owns and operates the Blackjack stores, serves as a manager of the Defendant entities, ultimately controls significant aspects of the Blackjack stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees.  29 U.S.C. § 203(d).

133.    At all relevant times, by virtue of his role as CEO of Askar Brands, Sam Askar has had financial control over the operations at each of the Blackjack stores.

134.    At all relevant times, by virtue of his role as CEO of Askar Brands, Sam Askar has a role in significant aspects of the Blackjack stores' day to day operations.

135.    At all relevant times, by virtue of his role as CEO of Askar Brands, Sam Askar has had control over the Blackjack stores' pay policies.

136.    At all relevant times, by virtue of his role as CEO of Askar Brands, Sam Askar has had power over personnel and payroll decisions at the Blackjack stores, including but not limited to influence of delivery driver pay.

137.    At all relevant times, by virtue of his role as CEO of Askar Brands, Sam Askar has had the power to hire, fire and discipline employees, including delivery drivers at Blackjack stores.

138.    At all relevant times, by virtue of his role as CEO of Askar Brands, Sam Askar has had the power to stop any illegal pay practices that harmed delivery drivers at the Blackjack stores.

139.    At all relevant times, by virtue of his role as CEO of Askar Brands, Sam Askar has had the power to transfer the assets and liabilities of the Blackjack stores.

140.    At all relevant times, by virtue of his role as CEO of Askar Brands, Sam Askar has had the power to declare bankruptcy on behalf of the Blackjack stores.

141.    At all relevant times, by virtue of his role as CEO of Askar Brands, Sam Askar has had the power to enter into contracts on behalf of each of the Blackjack stores.

142.    At all relevant times, by virtue of his role as CEO of Askar Brands, Sam Askar has had the power to close, shut down, and/or sell each of the Blackjack stores.

143.    At all relevant times, by virtue of his role as CEO of Askar Brands, Sam Askar had authority over the overall direction of each of Blackjack stores and was ultimately responsible for their operations.

144.    The Blackjack stores function for Sam Askar's profit.

145.    Sam Askar has influence over how the Blackjack stores can run more profitably and efficiently.

**John Doe Individuals 1-10**

146.    Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, there are other Defendants who own an interest and/or have operational control over the Blackjack stores that also qualify as Plaintiff's "employer" under the FLSA.

147.   The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

### III.   Facts

**Class-wide Factual Allegations**

148.   During all relevant times, Defendants operated the Blackjack stores.

149.   Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, there are at least 42 Blackjack stores in Colorado, Wyoming, Montana, Arizona, Utah, and Florida.

150.   The primary function of the Blackjack stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

151.   Some or all of the Blackjack stores employ delivery drivers.

152.   Plaintiff and the similarly situated employees Plaintiff seeks to represent are current and former delivery drivers employed by Defendants at the Blackjack stores.

153.   All delivery drivers employed at the Blackjack stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers, and complete various tasks inside the restaurant when they were not delivering pizzas.

154.   The delivery drivers work "dual jobs"—one where they deliver food and receive tips, and another where they work inside the store completing non-tipped duties.

155.   During the relevant time period, Defendants' delivery drivers are paid minimum wage minus a tip credit for all hours worked regardless of whether they were working inside the store or outside the store.

156.    The Blackjack delivery drivers' non-tipped job duties were not related to their tipped job duties.

157.    The Blackjack delivery drivers' inside duties included, but were not limited to, taking phone orders, helping carryout customers, preparing or cutting pizzas, folding pizza boxes, doing dishes, cleaning around the store, and completing any other tasks necessary for the operation of the restaurant.

158.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

159.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, registration costs, financing, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

160.    Pursuant to such requirements, Plaintiff and other similarly situated employees purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, paid for automobile financing and registration, and incur cell phone and data charges all for the primary benefit of Defendants.

161.    The Blackjack stores do not track their delivery drivers' actual expenses and do not keep records of all of those expenses.

162.    One or more of the Blackjack stores do not reimburse delivery drivers for their actual expenses.

163.    None of the Blackjack stores reimburse delivery drivers for their actual expenses.

164.    One or more of the Blackjack stores do not reimburse delivery drivers at the IRS standard business mileage rate.

165.    None of the Blackjack stores reimburse delivery drivers at the IRS standard business mileage rate.

166.    One or more of the Blackjack stores do not reimburse delivery drivers at a reasonable approximation of the drivers' expenses.

167.    None of the Blackjack stores reimburse delivery drivers at a reasonable approximation of the drivers' expenses.

168.    Delivery drivers at the Blackjack stores are reimbursed at a percentage of the delivery price that they are delivery.

169.    For example, Plaintiff received between 4% and 8% per delivery.

170.    The Blackjack stores' reimbursement arrangements fully reimburse delivery drivers for their expenses.

171.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.  2016: 54 cents/mile
    b.  2017: 53.5 cents/mile
    c.  2018: 54.5 cents/mile
    d.  2019: 58 cents/mile

172.    As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Colorado law.

173.    At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at their stores.

174.    All of Defendants' delivery drivers worked under circumstances similar to that of Plaintiff.

175.    All of Defendants' delivery drivers were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

176.    Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable and materially incorrect underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

177.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses and other job expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

178.    Defendants failed to properly claim a tip credit from the wages of their delivery drivers because they failed to properly inform the drivers of the tip credit requirements of the FLSA. *See* 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b).

179.    Alternatively, Defendants failed to properly claim a tip credit from the wages of their delivery drivers because they failed to actually pay the wage rate they told the drivers they would pay after accounting for unreimbursed expenses.

180.    Defendants improperly retained delivery driver tips when the receipt was not signed, even when the company approved and processed the credit card transaction.

181.    Defendants required drivers to clean the "toppers" (bearing the company logo) before they clocked in for their shift.

182.    Defendants have willfully failed to pay minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Domino's Pizza stores.

### Plaintiff's Individual Factual Allegations

183.    Robert Knerr worked as a delivery driver at one of Defendants' Blackjack stores located in Boulder, Colorado from approximately 2015 to approximately May 2017.

184.    Robert Knerr worked dual jobs—one where he delivered food and receives tips, and another where he worked inside the store completing non-tipped duties.

185.    Robert Knerr was paid a "tipped" minimum wage, *i.e.*, less than minimum wage, for all hours worked.

186.    Robert Knerr was paid minimum wage minus a tip credit for all hours worked. Specifically, he was paid $6.50 per hour.

187.    Robert Knerr never received a tip for his inside job duties.

188.    Robert Knerr's inside job duties were not related to his delivery job duties.

189.    Robert Knerr's inside duties included taking phone orders, helping carryout customers, cleaning, cutting pizzas, and folding pizza boxes.

190.    Robert Knerr received a percentage of each delivery he completed as a reimbursement for his delivery-related expenses.

191.    Robert Knerr was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

192.    Robert Knerr was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

193.    Robert Knerr purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, financing, and incur cell phone and data charges all for the primary benefit of Defendants.

194.    Defendants did not track the actual expenses incurred by Robert Knerr.

195.    Defendants did not reimburse Robert Knerr based on his actual delivery-related expenses.

196.    Robert Knerr was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

197.    Defendants' reimbursement policy did not reasonably approximate the expenses incurred by Robert Knerr.

198.   During Robert Knerr's employment with Defendants, Defendants have failed to adequately reimburse Robert Knerr for automobile and other job-related expenses.

199.   Robert Knerr regularly made two to three deliveries per hour during the hours he works as a delivery driver.

200.   Robert Knerr regularly drove about 4-6 miles per delivery.

201.   Robert Knerr was reimbursed a percentage of the sale between 4% and 8%.

202.   For example, if Robert Knerr made 4 deliveries where the total cost of the pizzas was $60, and he received 4% as reimbursement, his reimbursement would be $2.40.

203.   At 5 miles per delivery, this amounts to a reimbursement to Robert Knerr of $.12 per mile.

204.   In 2017, for example, the IRS business mileage reimbursement has been $.535 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Robert Knerr's automobile expenses, every mile driven on the job decreased his net wages by approximately $.415 ($.535 - $.12) per mile. Considering his estimate of about 5 average miles per delivery, Defendants under-reimbursed him about $2.07 per delivery ($.415 x 5 miles).

205.    Thus, while making deliveries (assuming 2.5 deliveries per hour), Robert Knerr "kicked back" to Defendants approximately $5.19 per hour ($2.07 per delivery x 2.5 deliveries per hour).

206.    Defendants did not properly inform Robert Knerr of the tip credit requirements of the FLSA.

207.    Defendants failed to pay Robert Knerr the tipped wage rate they promised they would pay him, therefore they were not permitted to claim a tip credit from his wages.

208.    Plaintiff was required to clean his "topper" before he clocked in for his shift.

209.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Robert Knerr minimum wage as required by law.

### Collective Action Allegations

210.    Plaintiff brings the First Count on behalf of himself and

All similarly situated current and former delivery drivers employed at the Blackjack stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action.

211.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile

expenses and other job-related expenses.  Plaintiff's claims are essentially the same as those of the FLSA Collective.

212.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

213.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and time and a half overtime wages for hours worked in excess of 40 per week.

214.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

215.    Defendants are aware or should have been aware that they are required to inform employees of the FLSA tip credit requirements before they are permitted to claim a tip credit against the employee's wages.

216.    Defendants are aware or should have been aware that they were not permitted to pay their employees a tipped wage rate for hours worked in a non-tipped capacity.

217.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

218.    The FLSA Collective members are readily identifiable and ascertainable.

219.    For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

220.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

**Class Action Allegations**

221.    Plaintiff brings the Second and Third Counts under the Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Blackjack stores in the State of Colorado from the date three years prior to the filing of the complaint to the date of final judgment in this matter (the "Rule 23 Class").

222.    Excluded from the Rule 23 are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 class.

223.    The number and identity of the Rule 23 class members are ascertainable from Defendants' records.

224.    The hours assigned and worked, the positions held, and the rates of pay and reimbursement for each Rule 23 Class Member are determinable from Defendants' records.

225.    For the purposes of notice and other purposes related to this action, the names and contact information of Rule 23 Class Members are readily available from Defendants.

226.    Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

227.    The Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

228.    There are more than 50 Rule 23 Class members.

229.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

230.    Plaintiff and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime, and failing to reimburse for expenses.

231.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Colorado wage law.

232.    Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

233.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

234.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

235.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

236.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.

237.    Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Defendants and other employers throughout the state violate the Colorado wage and hour law. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class

members who are not named in the complaint a degree of anonymity, which allows for
the vindication of their rights while eliminating or reducing these risks.

238.     This action is properly maintainable as a class action under Federal Rule of
Civil Procedure 23(b)(3).

239.     Common questions of law and fact exist as to the Rule 23 Class that
predominate over any questions only affecting Plaintiffs and the Rule 23 Class members
individually and include, but are not limited to:

a.   Whether Defendants paid Plaintiff and the Rule 23 Class members at the
proper minimum wage rate for all hours worked;

b.   Whether Defendants required Plaintiff and the Rule 23 Class members to
drive their own cars for work;

c.   Whether Defendants failed to reimburse automobile expenses, gasoline
expenses, and other job-related expenses, as described herein, causing
Plaintiff and the Rule 23 Class members' wages to drop below legally
allowable minimum wage and overtime;

d.   Whether Defendants reimbursed Plaintiff and the Rule 23 Class members
at the IRS standard business mileage rate for the miles they drove
completing deliveries for Defendants;

e.   Whether Defendants recorded Plaintiff and the Rule 23 Class members'
actual expenses;

f.   Whether Defendants properly paid Plaintiff and the Rule 23 Class members for hours worked in a non-tipped capacity;

g.   Whether Defendants' policy of failing to pay Plaintiff and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

h.   The nature and extent of class-wide injury and the measure of damages for those injuries.

240.   In recognition of the services Plaintiff have rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## IV.   Causes of Action

### FIRST CLAIM FOR RELIEF
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

241.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

242.   Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

243.   Defendants failed to properly inform Plaintiff and the FLSA Collective of the requirements for taking a tip credit under the FLSA.

244.   Plaintiff and the FLSA Collective worked in dual jobs.

245.   Defendants paid Plaintiff and the FLSA Collective a tipped wage rate for all hours worked.

246.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

247.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

248.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

249.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**SECOND CLAIM FOR RELIEF**
**Failure to Pay Minimum Wages—C.R.S. 8-6-101, *et seq*.**
**(On Behalf of Plaintiff and the Rule 23 Class)**

250.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

251.    Each Defendant has at all times been an "employer" of Plaintiff and the Rule 23 Class members within the meaning of the Colorado minimum wage law.

252.    Defendants failed to pay Plaintiff and the Rule 23 Class members all minimum wages owed.

253.    Defendants conduct and practices, as described herein, were willful and intentional.

254.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff the Rule 23 Class members for unpaid wages, costs, reasonable attorneys' fees,

and pre-judgment interest for all violations which occurred within the three years prior to the filing of the Complaint.

### THIRD CLAIM FOR RELIEF
**Colorado Wage Claim Act—C.R.S. 8-4-101, *et seq.***
**(On Behalf of Plaintiff and the Rule 23 Class)**

255.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

256.    Each Defendant has at all times been an "employer" of Plaintiff and the Rule 23 Class members within the meaning of the Colorado Wage Act.

257.    Defendants failed to pay Plaintiff and the Rule 23 Class members in a timely manner as required by C.R.S. 8-4-103(1).

258.    Defendants have taken unlawful deductions from the wages of Plaintiff and the Rule 23 Class members by failing to properly reimburse for delivery-related expenses. *See* C.R.S. 8-4-105.

259.    Defendants conduct and practices, as described herein, were willful and intentional.

260.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff the Rule 23 Class members for unpaid wages, liquidated damages, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the three years prior to the filing of the Complaint.

**WHEREFORE**, Plaintiff Robert Knerr prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an

opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.      Unpaid minimum wages, overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure under Colorado state law.

D.      Designation of Plaintiff as a representative of the Rule 23 Class and counsel of record as Class Counsel.

E.      Declaratory judgment that the practices complained of herein are unlawful under the Colorado Revised Statutes and regulations promulgated thereunder.

F.      An award of unpaid minimum wages, unreimbursed expenses, unlawful deductions, and liquidated damages due under the FLSA and Colorado wage laws.

G.      An award of prejudgment and post-judgment interest.

H.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

I.      Such other legal and equitable relief as the Court deems appropriate.


**JURY DEMAND**


Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

DATED: March 18, 2019

Respectfully submitted,


**BILLER & KIMBLE, LLC**

*/s/ Andrew P. Kimble*
Andrew P. Kimble
Biller & Kimble, LLC
Of Counsel to Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
akimble@billerkimble.com


**LAW OFFICE OF DAVID LICHTENSTEIN, LLC**

David Lichtenstein
Matt Molinaro
Kristina Rosett
Law Office of David Lichtenstein, LLC
1556 Williams St., Suite 100
Denver, CO 80218
Telephone: (303) 831-4750
dave@lichtensteinlaw.com
matt@lichtensteinlaw.com
kristina@lichtensteinlaw.com


Counsel for Plaintiff and the putative class and collective