**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  19-cv- 00799-JKL-MEH

ROBERT KNERR and KARYN SQUIRES, on behalf
of themselves and those similarly situated,

      Plaintiffs,

v.

BOULDER BJ, LLC,
ARVADA BJ, LLC,
WESTMINSTER BJ, LLC,
LAKEWOOD BJ, LLC,
TAMIAMI BJ, LLC
SINGLEDECK, LLC, and
BASSAM "SAM" ASKAR.

      Defendants.

---

**PLAINTIFF KARYN SQUIRES' MOTION FOR DEFAULT JUDGMENT**

---

      Plaintiff Karyn Squires ("Ms. Squires") hereby moves the Court for entry of a default judgment against Defendant Singledeck, LLC ("Singledeck") d/b/a "Blackjack Pizza."[1] As grounds for said Motion, Ms. Squires states as follows:

**CERTIFICATION OF CONFERRAL**

      The undersigned counsel certifies that he has not conferred with Singledeck because of the nature of this Motion.

**I.      BACKGROUND**

      1.      Ms. Squires alleges a claim against Singledeck for unpaid minimum wages under

---

[1] This Renewed Motion addresses the issues identified by the Court in its May 8, 2025 Order Denying Without Prejudice Plaintiff's Motion for Entry of Default and Default Judgment (ECF 274).

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; a claim for unpaid minimum

wages under the Colorado Minimum Wage of Workers Act ("CMWWA"), C.R.S. § 8-6-101 *et*

*seq.*; and a claim for unpaid wages under the Colorado Wage Claim Act ("CMWA"), C.R.S. § 8-

4-101 *et seq.* ECF 202.

2.    Singledeck employed Ms. Squires as a pizza delivery driver from about March 28,

2016 to March 9, 2018 at its Blackjack Pizza restaurant located at 2328 South Academy Boulevard,

Colorado Springs, Colorado, 80916. Ex. 1 ¶ 2.

3.    For federal minimum wage compliance purposes (explained below), Singledeck

paid Ms. Squires at a nominal rate of $7.25 per hour, including a tip credit (before subtracting

unreimbursed vehicle costs). *Id.* ¶ 3.

4.    Singledeck required Ms. Squires to provide her personal vehicles to perform

deliveries for Singledeck. *Id.* ¶ 4.

5.    Singledeck required that Ms. Squires personal vehicles be safe, in good working

condition, and insured. *Id.* ¶ 5.

6.    Based on Singledeck's requirements, Ms. Squires paid for, and provided, safe,

operable, and insured vehicles in good working condition to perform Singledeck's deliveries to its

customers. *Id.* ¶ 6.

7.    Ms. Squires alleges that Singledeck reimbursed her less than a reasonable

approximation of her vehicle costs incurred in performing her job. ECF 202.

8.    Ms. Squires' average round-trip delivery distance was at least 8 miles per delivery.

*Id.* ¶ 7.

9.    Singledeck reimbursed Ms. Squires for her vehicle costs at a flat rate of $1.25 per

delivery. *Id.* ¶ 8.

10.     From approximately March 28, 2016 to November 11, 2016, Ms. Squires drove her 2006 Acura TL to perform her deliveries for Singledeck. *Id.* ¶ 9.

11.     Ms. Squires contemporaneously recorded a total of 9,929 miles driven in the 2006 Acura TL for Singledeck.  *Id.* ¶ 10; Ex. 2 at 1-5.

12.     Ms. Squires estimates that she drove another 5,000 personal miles during that time. Ex. 1 ¶ 11.

13.     The United States Environmental Protection Agency ("EPA") rated the fuel economy of a *new* 2006 Acura TL at 18 miles per gallon for city driving. Ex. 3.

14.     The city fuel economy rating is most reflective of Ms. Squires' fuel economy on the job because she very rarely drove on a highway to perform deliveries. Ex. 1 ¶ 12.

15.     www.gasbuddy.com shows an average gasoline price of approximately $2.20 per gallon while Ms. Squires drove the 2006 Acura TL for Singledeck.  Ex. 4.

16.     Ms. Squires purchased the 2006 Acura TL in 2011. She received a credit for a trade-in, then paid approximately $450.00 per month through about September 2016 toward a 7 year vehicle loan. *Id.* ¶ 13.

17.     Ms. Squires acquired the 2006 Acura TL with approximately 45,000 odometer miles. *Id.* ¶ 14.

18.     The 2006 Acura TL suffered transmission failure in November 2016, leaving it no longer drivable. *Id.* ¶ 15.

19.     The 2006 Acura TL was repossessed shortly thereafter.  *Id.* ¶ 16.

20.     The 2006 Acura TL had approximately 120,000 odometer miles at the time it suffered transmission failure and at the time it was repossessed. *Id.* ¶ 17.

21.     Not counting the value of the trade-in, Ms. Squires paid a total of approximately

3

$27,000.00 for the 2006 Acura TL and associated loan interest (approximately $450.00 per month

x approximately 60 monthly payments = approximately $27,000.00). *Id.* ¶ 18.

22.     Per Kelley Blue Book, the 2006 Acura TL's trade-in value was approximately

$4,612.00 as of November 11, 2016, presuming the vehicle was in "good" condition. However,

the Acura had suffered transmission failure. Ex. 5.

23.     Ms. Squires no longer possesses records of her repair and maintenance costs for the

2006 Acura TL. However, she recalls repairs to parts including the alternator, starter, brakes, brake

pads, rotors, battery, spark plugs, headlights, belts and shock absorbers, plus routine vehicle

maintenance. Ex. 1 ¶ 19.

24.     A July 21, 2016 study by www.yourmechanic.com estimates an average of

$3,900.00 total repair and maintenance costs between the interval of 75,000 and 100,000 odometer

miles. Ex. 6 at 2.

25.     Ms. Squires paid approximately $125.00 per month for vehicle insurance while she

drove the 2006 Acura TL for Singledeck. Ex. 1 ¶ 20.

26.     Ms. Squires drove a 2013 Toyota Corolla for Singledeck between November 2016

and March 2018. *Id.* ¶ 21.

27.     Ms. Squires contemporaneously recorded a total of 20,096 miles driven in the 2013

Toyota Corolla for Singledeck. *Id.* ¶ 22; Ex. 2 at 5-11.

28.     The EPA rated the 2013 Toyota Corolla at 26 miles per gallon for city driving. Ex.

7.

29.     The same www.gasbuddy.com historical price chart shows an average gasoline cost

in Colorado Springs of approximately $2.40 per gallon while Ms. Squires drove her 2013 Toyota

Corolla for Singledeck. Ex. 4.

4

30.     Ms. Squires acquired the 2013 Toyota Corolla in November 2016 for approximately $15,000.00. Ex. 1 ¶ 23.

31.     A CarFax vehicle history report shows that the 2013 Toyota Corolla had approximately 63,000 odometer miles when Ms. Squires purchased it. Ex. 8 at 3.

32.     The CarFax vehicle history report also shows that the 2013 Toyota Corolla had about 91,803 odometer miles at the end of Ms. Squires employment with Singledeck. *Id.* at 5.

33.     Per Kelley Blue Book, the 2013 Toyota Corolla had a trade-in value of $6,651.00 as of the end of Ms. Squires' employment. Ex. 9.

34.     Ms. Squires paid $2,000.00 as a down payment toward the purchase of the 2013 Toyota Corolla. Ex. 1 ¶ 24.

35.     Ms. Squires financed the remaining approximately $13,000.00 of the purchase price of the 2013 Toyota Corolla (approximately $15,000.00 purchase price - $2,000.00 trade-in value = approximately $13,000.00 financed) over 72 months. *Id.* ¶ 25.

36.     Each monthly payment for the 2013 Toyota Corolla was approximately $253.00. *Id.* at 26.

37.     Ms. Squires is only able to produce partial records of her repair and maintenance costs, but not the full set of records and she does not recall all of those repair and maintenance costs. *Id.* ¶27; Ex. 10.

38.     Based on the same July 21, 2016 study, www.yourmechanic.com found an average of $3,500.00 total repair and maintenance costs between the interval of 50,000 and 75,000 odometer miles. Ex. 6.

39.     Ms. Squires paid approximately $125.00 per month for vehicle insurance while she drove the 2013 Toyota Corolla for Singledeck. Ex. 1 ¶ 28.

5

40.    During her employment, Ms. Squires complained to Singledeck about low reimbursements; however, Singledeck failed to increase its reimbursement rates. *Id.* ¶ 29.

41.    The Court entered a default against Singledeck on June 17, 2025. ECF 285.

## II.    ARGUMENT

### A.    Default Judgment

Fed. R. Civ. P. 55(b)(2) provides that the Court may enter a default judgment determining the amount of damages or hold a hearing to determine damages. The facts of the Complaint are accepted as true and the Court must consider whether the unchallenged facts constitute a legitimate cause of action. Charles A Wright, Arthur R. Miller, & Mary K. Kane 10A Fed. Prac. & Proc. Civ. § 2688.1 (4th ed.); *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010).

### C.    Cause Of Action

District courts around the nation, including courts in this District, recognize a cause of action for minimum wage violations resulting from under-reimbursed vehicle costs (nominal wages – unreimbursed vehicle costs = subminimum net wages. *See, e.g., Smith v. Pizza Hut, Inc.,* 2011 U.S. Dist. LEXIS 76793, at *11-12 & n.4 (D. Colo. July 14, 2011); *Darrow v. WKRP Mgmt., LLC,* 2011 U.S. Dist. LEXIS 59388, at *9-17 (D. Colo. June 3, 2011); *Perrin v. Papa John's Int'l., Inc.,* 818 F. Supp. 2d 1146, 1149-53 (E.D. Mo. Mar. 8. 2011); *Wass v. NPC Int'l., Inc.,* 688 F. Supp. 2d 1282, 1285-86 (D. Kan. 2010).

The standard established in this District and others is that the plaintiff must show that the defendant failed to reasonably approximate his or her vehicle costs. *Id.* In *Smith*, Judge Arguello started with the applicable regulation, 29 C.F.R. § 531.35, also known as the "anti-kickback" regulation: "the wage requirements of the [FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the

whole or part of the wage delivered to the employee." 2011 U.S. Dist. LEXIS 76793, at *9. Judge Arguello next explained that "[a] kickback occurs when the cost of tools that are specifically required for the performance of the employee's particular work 'cuts into the minimum or overtime wages required to be paid him under the Act.'" *Id.* at *9-10 (citing 29 U.S.C. §§ 531.35, 531.32(c), 778.217). Judge Arguello concluded that "[t]herefore, an employee may claim that his wage rate was reduced below the minimum wage because the employer failed to make a reasonable approximation of his expenses in formulating its reimbursement policy." *Id.* at *10 (citing *Darrow*, 2011 U.S. Dist. LEXIS 59388, at *8); *see also, e.g., Perrin v. Papa John's Int'l., Inc.*, 2013 U.S. Dist. LEXIS 181749, at *22-23 (E.D. Mo. Dec. 31, 2013) (summarizing: "…if the employer's approximation is unreasonable, the employee may have a claim that his wage rate was reduced below minimum wage as a result of the insufficient reimbursement. In proving such a claim, a plaintiff may rely on a reasonable estimate of his vehicle-related expenses and need not show his actual expenses.") (internal citations omitted). Thus, the legal significance of employers failing to reasonably approximate their delivery drivers' vehicle costs is that delivery drivers may sue for the amount of under-reimbursement that reduces net wages below the minimum. *Id.*

Courts have likewise consistently recognized a CMWWA minimum wage claim based on unreimbursed vehicle costs. Moreover, those courts recognize that the same legal standard applies in FLSA and CMWWA minimum wage claims based on under-reimbursed vehicle cost: failure to reasonably approximate delivery drivers' vehicle costs.

In *Bass v. PJCOMN Acq. Corp.*, the plaintiffs were employed as pizza delivery drivers. 2011 U.S. Dist. LEXIS 58352, at *2 (D. Colo. June 1, 2011). They alleged that their employer violated the FLSA and CMWWA because those employers failed to pay their delivery drivers the federal and Colorado minimum wage rates after deducting vehicle expenses and other costs

incurred in performing their deliveries. *Id.*, 2011 U.S. Dist. LEXIS 58352, at \*2-3. The District of

Colorado not only recognized the CMWWA claim, but certified that claim to proceed as a class

action under Fed. R. Civ. P. 23. 2011 U.S. Dist. LEXIS 58352, at \*17-18. Judge Blackburn

explained that the same law and evidence apply to the federal and CMWWA claims:

> …there is no indication that the claims of a CMWWA Rule 23 class would
> predominate in this case over the similar claim in the FLSA collective action. ***The
> evidence relevant to the two claims is essentially the same. The big
> difference between the two claims is the amount of the minimum wage applicable
> under the two acts.***

2011 U.S. Dist. LEXIS 58352, at \*17-18 (emphasis added).

In *Darrow*, pizza delivery drivers likewise alleged that their employer violated the FLSA

and CMWWA by failing to pay its delivery drivers the federal and Colorado minimum wage rates

after deducting unreimbursed vehicle expenses. *Id.*, 2011 U.S. Dist. LEXIS 59388, at \*1-2. Judge

Arguello recognized that, "[t]o state a claim for a violation of the FLSA *and the CMWWA*, Plaintiff

not only must allege facts sufficient to lead to the plausible inference that Defendants'

reimbursement formula *did not reasonably approximate Plaintiff's expenses*, but also, that the

under-reimbursement led to Plaintiff being paid less than federal and Colorado minimum wages."

2011 U.S. Dist. LEXIS 59388, at \*15 (emphasis added); *ee also* Colo. Dept. of Labor Interpretive

Notice & Formal Opinion # 16 (Ex. 11) (recognizing that unreimbursed vehicle costs may reduce

net wage below the minimum wage in violation of the CMWWA).

These decisions are consistent with the Colorado Court of Appeals repeated recognitions

that interpretations of the FLSA should be applied to Colorado wage and hour law. *See, e.g., Chase

v. Farmers Ins. Exch.*, 129 P.3d 1011, 1014-15 (Colo. Ct. App. 2004) ("Under the FLSA, the

employer bears the burden of demonstrating that its employee 'plainly and unmistakably' qualifies

for an exemption. We perceive no reason why that same burden should not also be placed on an

employer seeking to establish that an employee falls within an exemption under Colorado law.")
(internal citations omitted); *see also Kennett v. Bayada Home Health Care, Inc.*, 135 F. Supp.
1232, 1238 (D. Colo. 2015) (following *Chase*); *Salazar v. Butterball, LLC*, 2010 U.S. Dist. LEXIS
24252, at *31 n.9 (D. Colo. Mar. 15, 2010) (in adjudicating claims under the FLSA and the
"CMWA" (different abbreviation for "CMWWA"), recognizing that "[a] court may apply federal
interpretations of a federal law to a state law if there is no state law on point and the state statute
is patterned on or essentially identical to the federal law.") (citing cases including *Chase*).

## C.  Proof Required

*Every* court to consider the issue, including several rulings in this District, has ruled that
plaintiffs alleging minimum wage violations resulting from under-reimbursed vehicle costs need
not prove, or even know, their actual vehicle costs. Courts have unanimously held that these claims
are proven through ***estimates***, including proof of the employer's unreasonable reimbursement
rates. *Drollinger v. Network Global Logistics, Inc.,* 2016 U.S. Dist. LEXIS 171013, at *3-5 (D.
Colo. Dec. 8, 2016), objections overruled at *Drollinger v. Network Global Logistics, Inc.,* Case
No. 16-cv-00304-MSK-MJW (D. Colo. Jan. 18, 2017); *Darrow v. WKRP Mgmt., LLC*, 2012 U.S.
Dist. LEXIS 24997, at *14-15 (D. Colo. Feb. 28, 2012); *Smith*, 2011 U.S. Dist. LEXIS 76793, at
*11; *Darrow*, 2011 U.S. Dist. LEXIS 59388, at *9-15; *Rodriguez v. GC Pizza, LLC*, 2022 U.S.
Dist. LEXIS 170920, at *23-25 (D. Neb. Sept. 21, 2022); *Benton v. Deli Mgmt., Inc.,* 396 F. Supp.
3d 1261, 1274-76 (N.D. Ga. Aug. 8, 2019); *Sullivan v. PJ United, Inc.*, 362 F. Supp. 3d 1139, 1155
(N.D. Ala. 2018); *Sullivan v. PJ United, Inc.,* 2017 U.S. Dist. LEXIS 223270, at *15-23 (N.D. Ala.
Oct. 16, 2017); *Villalpando v. Exel Direct Inc.*, 2016 U.S. Dist. LEXIS 53773, at *45 (N.D. Cal.
Apr. 21, 2016); *Perrin v. Papa John's Int'l., Inc.,* 2014 U.S. Dist. LEXIS 133974, at *5 & 12 (E.D.
Mo. Sept. 24, 2014); *Perrin,* 2013 U.S. Dist. LEXIS 181749, at *20-22; *Wass v. NPC Int'l., Inc.,*

2011 U.S. Dist. LEXIS 32761, at *9 (D. Kan. Mar. 28, 2011); *Perrin,* 818 F. Supp. 2d at 1146-53; *Wass*, 688 F. Supp. 2d at 1284-87.

Likewise, the Department of Labor allows employees pursuing minimum wage claims based on un- or under-reimbursement vehicle expenses to seek damages either by proving the actual damages they incurred or by relying on the IRS standard business mileage rate. "As an enforcement policy, the IRS standard business mileage rate found in IRS Publication 917, 'Business Use of a Car' may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes." Department of Labor Field Operations Handbook, Section 30c15(a).

Deference to the DOL's enforcement policy is appropriate under Supreme Court precedent. *Skidmore v. Swift & Co*., 323 U.S. 134, 140 (1944) ("Good administration of the Act and good judicial administration alike require that the standards of public enforcement and those for determining private rights shall be at variance only where justified by very good reasons.").

Here, Ms. Squires seeks her actual damages because, as described herein, they exceeded the IRS standard business mileage rate.

**D.    Ms. Squires' Reasonable Estimates Of Her Vehicle Costs**

Ms. Squires drove a 2006 Acura TL for Singledeck from the beginning of her employment in March 2016 until about November 2016. Then, she drove a 2013 Toyota Corolla for Singledeck from about November 2016 through the end of her employment in March 2018.

**1.    2006 Acura TL**

**a.    Gasoline Cost**

Ms. Squires estimates her fuel economy for the 2006 Acura TL at 18 mile per gallon based on the EPA's original city fuel economy rating. The city fuel economy rating is most reflective of Ms.

Squires' fuel economy on the job because she rarely drove on a highway to perform deliveries. Per a historical Colorado Springs gas price report by www.gasbuddy.com, Ms. Squires estimates that she paid an average of $2.20 per gallon for gasoline during the time she drove her Acura for Singledeck. Thus, her average per-mile gas cost was approximately $0.12 per mile ($2.20 average per-gallon gasoline cost / 18 miles per gallon = $0.12 gas cost per mile).

   b.  **Capital & Interest Cost**

Ms. Squires purchased the 2006 Acura TL in 2011. She received a credit for a trade-in, then paid approximately $450.00 for 60 months toward a 7 year note. Those payments were made through about September 2016. The Acura TL suffered transmission failure in November 2016, and it was repossessed shortly thereafter. Not counting the value of the trade-in, Ms. Squires paid a total of approximately $27,000.00 for the 2006 Acura TL and associated loan interest (approximately $450.00 per month x approximately 60 monthly payments = approximately $27,000.00). The trade in value as of November 11, 2016 was approximately $4,612.00 presuming the vehicle was in "good" condition. However, the Acura suffered transmission failure at that time. She acquired the vehicle with approximately 45,000 odometer miles and it was repossessed with approximately 120,000 odometer miles. Thus, Ms. Squires drove the Acura approximately 75,000 miles over approximately 5 years (approximately 120,000 odometer miles as of transmission failure – approximately 45,000 odometer miles at acquisition = approximately 75,000 total miles driven). Thus, excluding the value of the trade-in vehicle, Ms. Squires' capital and interest cost per mile totaled approximately $0.299 (($27,000.00 principal and interest payments - $4,612.00 trade-in value as of November 2016 presuming "good" condition) / 75,000 miles = $0.299 per mile capital and interest costs).

### c.     Repair & Maintenance Cost

Ms. Squires no longer possesses records of her repair and maintenance costs and does not recall all such costs. Based the July 21, 2016 study by www.yourmechanic.com, Ms. Squires estimates $3,900.00 total repair and maintenance costs between 75,000 and 100,000 odometer miles.  That equals repair and maintenance costs of $0.156 per mile ($3,900.00 repair and maintenance cost for 25,000 mile interval between 75,000 and 100,000 odometer miles = $0.156 repair and maintenance cost per mile).

### d.     Insurance

Ms. Squires paid approximately $125.00 per month for insurance while she drove the 2006 Acura TL for Singledeck. Her contemporaneous work mileage records show 9,929 total work miles while she drove the Acura for Singledeck. Ms. Squires estimates that she also drove the Acura a total of 5,000.00 personal miles in 2016. Thus, Ms. Squires drove the Acura an average of approximately 1,445.21 miles per month that year ((9,929 work miles + 5,000 personal miles) / 10.33 months =   1,445.21 average miles per month). Accordingly, her insurance cost was approximately $0.086 per mile ($125.00 per month insurance cost / average miles 1,445.21 total miles per month = $0.086 per mile insurance cost).

### e.     Total Cost Per Mile

Adding these per-mile vehicle cost components shows $0.661 total per mile cost of driving:

$0.120 gas

$0.299 capital and interest cost

$0.156 repair & maintenance

$0.086 insurance

$0.661 total per-mile cost

### 2.     2013 Toyota Corolla

#### a.     Gasoline Cost

Ms. Squires estimates her fuel economy at 26 mile per gallon based on the EPA's original city fuel economy rating. Again, Ms. Squires seldom drove on a highway to deliver pizzas for Singledeck. Per the same historical Colorado Springs gas price report by www.gasbuddy.com, Ms. Squires estimates that she paid an average of $2.40 per gallon while she drove for Singledeck. Thus, her average per-mile gas cost was approximately $0.092 per mile ($2.40 average per-gallon gasoline cost / 26 miles per gallon = $0.092 gas cost per mile).

#### b.     Depreciation

Ms. Squires acquired the 2013 Toyota Corolla in November 2016 for approximately $15,000.00. At the time, it had approximately 63,000 odometer miles. She stopped driving that vehicle for work about May 27, 2018, when it had approximately 91,803 odometer miles. Per Kelley Blue Book, the 2013 had a trade-in value of $6,651.00 as of the end of Ms. Squires' employment. Thus, her depreciation cost was approximately $0.29 per mile during her employment ((approximately $15,000.00 purchase price – approximately $6,651.00 trade in value) / (approximately 91,803 miles at end of employment – approximately 63,000 miles at acquisition) = $0.29 per mile depreciation cost).

#### c.     Interest

Ms. Squires paid a $2,000.00 down payment toward the purchase of the 2013 Toyota Corolla. She agreed to finance the remainder of the purchase price, totaling approximately $13,000.00 (approximately $15,000.00 purchase price - $2,000.00 down payment = approximately $13,000.00 financed) over 72 months. Each monthly payment was approximately $253.00.  Thus, her agreed total principle and interest repayments were approximately $18,216.00 (($253.00 monthly payment x 72 months = $18,216.00 total paid in addition to trade-in value). Thus, she agreed to

approximately $5,216.00 total interest and finance charges ($18,216.00 installment payments – approximately $13,000.00 purchase price financed = $5,216.00 total interest and finance charges). Dividing that $5,216.00 interest cost over 72 months yields an average of $72.44 per month average interest and finance charges ($5,216.00 / 72 months = $72.44 average interest and finance charges per month).  Ms. Squires' CarFax report shows that she drove her Toyota an average of approximately 1,694.3 miles per month ((91,803 odometer miles as of March 27, 2018 – approximately 63,000 odometer miles as of November 11, 2016) / 17 months = 1,694.3 average miles per month). Dividing $72.44 average interest and finance cost per month by 1,694.3 average miles driven per month equals a $0.043 per-mile interest and finance cost ($72.44 average interest and finance cost per month / 1,694.3 average miles driven per month = $0.043 per mile interest and finance cost).

### d.    Repair & Maintenance Cost

Ms. Squires is only able to produce partial records of her repair and maintenance costs, but not the full set of records. She does not recall all of those costs. However, based on the same www.yourmechanic.com 2016 study of vehicle cost per interval of odometer mileage, Ms. Squires estimates that her repair and maintenance costs equal $0.14 per mile. That study shows an average of $3,500.00 repair and maintenance costs between 50,000 and 75,000 odometer miles. Ex. 6. Thus, it shows $0.14 repair and maintenance cost per mile ($3,500.00 / 25,000 miles = $0.14 repair and maintenance cost per mile).

### e.    Insurance

Ms. Squires paid approximately $125.00 per month for vehicle insurance while she drove the 2013 Toyota Corolla for Singledeck. Dividing Ms. Squires' $125.00 per month insurance cost by 1,694.3 average monthly miles equals $0.073 insurance cost per mile (approximately $125.00

vehicle insurance cost per month / 1,694.3 average miles driven per month = $0.073 insurance cost per mile).

### f.    Total Cost Per Mile

Adding these per-mile vehicle cost components shows $0.638 total per mile cost of driving:

$0.092 gas

$0.29 depreciation

$0.043 interest

$0.14 repair & maintenance

$0.073   insurance

$0.638 total per-mile cost

Arbitrators have repeatedly accepted the same methods of estimating vehicle costs. *Compare, e.g., Jones v. PJ Cheese, Inc.*, AAA Case No. 01-20-0015-6701 (Hill-Harvey Apr. 21, 2022) (Ex. 12) at 2-3 & 5 (arbitration award) *with Jones v. PJ Cheese, Inc.*, AAAA Case No. 01-20-0015-6701 (Ex. 13) (claimant's post-hearing brief) at 10-14; *compare Nelson v. PJ Cheese, Inc.*, AAA Case No. 01-19-0001-5314 (Kimmell Oct. 20, 2020) (Ex. 14) at 3-12 *with Nelson v. PJ Cheese, Inc.*, AAA Case No. 01-19-0001-5314 (Ex. 15) (claimant's post-hearing brief) at 15-24; *compare Ralph v. DOS Pizza, LLC.*, AAA Case No. 01-18-0002-2036 (Berger May 5, 2020) (Ex. 16) (interim award) at 8-13 *with Ralph v. DOS Pizza, LLC*, AAA Case No. 01-18-0002-2036 (Ex. 17) (claimant's post-hearing brief) at 23-28; *compare Ashton v. PJ Louisiana, Inc.*, AAA Case No. 01-17-0006-8180 (Pilie Mar. 26, 2019) (Ex. 18) (interim award) at 6-19 *with Ashton v. PJ Louisiana, Inc.*, AAA Case No. 01-17-0006-8180 (claimant's post-hearing brief) (Ex. 19) at 9-14.

### E.    Singledeck's Reimbursement Rate Was Unreasonable

Ms. Squires shows that Singledeck's reimbursement rate was unreasonable through the

following comparisons. Prior to presenting those comparisons, Plaintiff highlights the fact that Singledeck reimbursed her based on an average rate of $0.156 per mile ($1.25 per delivery / at least 8 average round-trip miles per delivery = $0.156 average reimbursement rate per mile), or less.

First, Singledeck's reimbursement rate is unreasonably low compared to the national average cost of driving. Courts recognize that the IRS standard business mileage reimbursement rate (the IRS rate) reflects the national average cost of driving. *See, e.g., Zellagui v. MCD Pizza, Inc.*, 59 F.Supp.3d 712, 716 (E.D. Pa. 2014) ("The IRS figure is a national average of the cost of operating a motor vehicle."); *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal. 4th 554, 565 (same). The IRS rate ranged from $0.535 to $0.545 per mile during Ms. Squires' employment. https://www.irs.gov/tax-professionals/standard-mileage-rates. Thus, Singledeck reimbursed Ms. Squires at a rate equivalent to only approximately 29% of the IRS rate, or the national average cost of driving ($0.156 per mile reimbursement rate / $0.54 per mile IRS rate during employment = approx. 29%). Arbitrator Daniel Williams recognized that "[t]he fact that Respondent only reimbursed [a pizza delivery driver] at approximately half of the IRS rate should have alerted it that its methodology was flawed." *Wallenberg v. PJ Utah, LLC*, AAA Case No. 01-21-0004-6899 (Williams Oct. 20, 2022) (Ex. 20) at 4. By comparison, Singledeck reimbursed Ms. Squires at a rate of less than one-third (1/3) of the IRS rate, or national average cost of driving.

Second, Singledeck's reimbursement rate of $0.156 per mile covered Ms. Squires' estimated $0.156 per-mile repair and maintenance cost for her Accura TL. That means Singledeck's reimbursements left no money to cover her cost of gasoline, vehicle payments, loan interest, insurance, taxes, license or registration. Basically, the same comparison applies to the Toyota Carolla. Singledeck's $0.156 per-mile reimbursement rate barely covered Ms. Squires'

16

$0.14 per mile repair and maintenance cost, leaving less than $0.02 per mile to cover her gasoline, depreciation, interest, insurance, tax, license and registration costs. That is truly unreasonable.

Third, arbitrators have consistently found similar, and even substantially higher, per-mile reimbursement rates unreasonable and insufficient:

| Arbitration Decision | Employer / Expert Reimbursement Rate Rejected | Reasonable Rate Determined By Arbitrator | Per Mile Difference |
|---|---|---|---|
| *Polomo v. GMRG Acq., LLC*, AAA Case No. 01-22-0004-7815 (Tenner June 24, 2024) (Ex. 21) | $0.345 average | IRS Rate ($0.56 to $0.655) | $0.215 to $0.31 |
| *Ridenour v. PJ Louisiana, Inc.*, AAA Case No. 01-21-0004-7137 (Ahern Feb. 16, 2023) (Ex. 22) | $0.20 to $0.32 | IRS Rate ($0.545 to $0.58) | $0.225 to $0.38 |
| *Benoit v. PJ Louisiana, Inc.*, AAA Case No. AAA 01-21-004-8139 (Duval Dec. 13, 2022) (Ex. 23) | $0.24 to $0.35 | IRS Rate ($0.545 to $0.585) | $0.195 to $0.345 |
| *Wallenberg v. PJ Utah, LLC*, AAA Case No. Case No. 01-21-0004-6899 (Williams Oct. 20, 2022) (Ex. 20) | $0.15 to $0.33 | IRS Rate ($0.545 to $0.58) | $0.215 to $0.43 |
| *Jones v. PJ Cheese, Inc.*, AAA Case No. 01-20-0015-6701 (Hill-Harvey Mar. 16, 2022) (Ex. 12) | $0.21 to $0.27 | $0.438 to $0.548. | $0.168 to $0.338 |
| *Rice Jr. v. PJ Cheese, Inc.*, AAA Case No. 01-20-0014-8150 (Bennett Apr. 13, 2022) (Ex. 24) | $0.22 to $0.28 | IRS Rate ($0.545 to $0.585) | $0.265 to $.365 |
| *Pannell v. Parts Authority, Inc.*, AAA Case No. 01-20-0009-6223 (Weinstock Aug. 2, 2021) (Ex. 25) | $0.25 to $0.28 | IRS Rate ($0.535 to $0.58) | $0.255 to $0.33 |
| *Montierth v. Parts Authority, Inc.*, AAA Case No. 01-20-0009-6228 (Guttell Jun. 24, 2021) (Ex. 26) | $0.16 to $0.17 | IRS Rate ($0.535 to $0.545) | $0.365 to $0.385 |

| | | | |
|---|---|---|---|
| *Morse v. Parts Authority, Inc.*, AAA Case No. 01-20-0003-8372 (Modica Mar. 29, 2021) (Ex. 27) | $0.32 to $0.36 | AAA Rate ($0.592 to $0.608) | $0.232 to $0.288 |
| *Omelet v. Parts Authority, Inc.*, AAA Case No. 01-20-0003-8239 (Pines Mar. 25, 2021) (Ex. 28) | $020 to $0.30 | IRS Rate ($0.535 to $0.575) | $0.235 to $0.375 |
| *Nelson v. PJ Cheese, Inc.*, AAA Case No. 01-19-0001-5314 (Kimmell Oct. 20, 2020) (Ex. 14) | $0.27 to $0.30 | $0.38 to $0.428 | $0.08 to $0.158 |
| *Ralph v. DOS Pizza, Inc.*, AAA Case No. 01-18-0002-2036 (Berger May 5, 2020) (Ex. 16) | $0.305 to $0.3525 | No rate specified by arbitrator, but arbitrator found $6,941.32 total un-reimbursed costs | N/A |
| *Ashton v. PJ Louisiana, Inc.*, AAA Case No. 01-17-0006-8180 (Pilie Mar. 26, 2019) (Ex. 18) | $0.175 | $0.48 to $0.51 | $0.305 to $0.335 |
| *In the Matter of An Arbitration*, 2015 AAA Employment LEXIS 221 (Finnigan Aug. 13, 2015) | $0.192 | IRS Rate ($0.505 to $0.55) | $0.313 to $0.358 |
| *In the Matter of An Arbitration*, 2015 AAA Employment LEXIS 237 (Finnigan Aug. 13, 2015) | $0.192 | IRS Rate ($0.505 to $0.55) | $0.313 to $0.358 |

Fourth, in *Darrow*, Judge Arguello found a $1.45 per-delivery reimbursement gap sufficient to state a claim under the FLSA and CMWWA. 2011 U.S. Dist. LEXIS 59388, at *15-16. The reimbursement gap here is much larger (at least 8 average miles per delivery x ($0.661 per mile cost of Accura TL - $0.156 per mile reimbursement rate) = $4.04 under-reimbursement per delivery). Notably, courts recognize that pizza companies "have little room when it comes to reimbursement [when] they are near the minimum wage fault line." *Hatmaker v. PJ Ohio, LLC*, 2019 U.S. Dist. LEXIS 191790, at *13 (S.D. Ohio Nov. 5, 2019).

Similarly, in *Koral v. Inflated Dough, Inc.*, Judge Daniel considered whether delivery

drivers alleged facts that support a minimum wage violation in the same claim. 2014 U.S. Dist. LEXIS 137202, at *12 (D. Colo. Sept. 29, 2014). He concluded that "the under-reimbursement, of an amount between $0.395 and $0.448 per mile driven, supports the existence of a federal and Colorado minimum wage violations." *Id.*, 2014 U.S. Dist. LEXIS 137202, at *12-13. Here, the per-mile under-reimbursements are larger ($0.661 per mile cost of driving Accura TL - $0.156 per mile reimbursement rate = $0.505 per mile difference).

## F.    Actual Damages

Singledeck reimbursed Ms. Squires based on an average rate of $0.156 per mile ($1.25 per delivery / at least 8 average round-trip miles per delivery = $0.156 average reimbursement rate per mile), or less.

Ms. Squires drove approximately 9,929 work miles in her 2006 Acura TL. Singledeck under-reimbursed her approximately $0.505 per mile while driving the Acura ($0.661 estimated cost per mile - $0.156 reimbursement per mile = $0.505 per mile under-reimbursement). Thus, Singledeck under-reimbursed Ms. Squires a total of approximately $5,011.66 for the cost of driving her Acura (9,929 work miles x $0.505 under-reimbursement per mile = $5,011.66 total under-reimbursement).

Ms. Squires drove approximately 20,096 work miles in her 2013 Toyota Corolla. Singledeck under-reimbursed her approximately $0.482 per mile while driving the Toyota ($0.638 estimated cost per mile - $0.156 reimbursement per mile = $0.482 per mile under-reimbursement). Thus, Singledeck under-reimbursed Ms. Squires a total of approximately $9,686.27 for the cost of driving her Acura (20,096 work miles x $0.482 under-reimbursement per mile = $9,686.27 total under-reimbursement).

The under-reimbursement for both vehicles totals $14,697.93 ($5,011.66 under-

reimbursement for Acura + $9,686.27 under-reimbursement for Toyota = $14,697.93 total under-reimbursement for both vehicles).

Singledeck paid Ms. Squires the bare $7.25 per hour federal minimum wage including a tip credit. *Rodriguez v. GC Pizza, LLC*, 2022 U.S. Dist. LEXIS 170920, at *28-30 (D. Neb. Sept. 21, 2022) (value of tip credit only counted toward full federal minimum wage rate, not wages in excess of federal minimum); *id.* at *2 & 28-30 (applying same rule prior to 2020 update to 29 C.F.R. § 531.59). Thus, Ms. Squires actual damages under the FLSA total $14,697.93. *Rechtoris v. Dough Mgmt., Inc.,* 2019 U.S. Dist. LEXIS 59617, at *4 (N.D. Ind. Apr. 5, 2019) (recognizing in same claim against a pizza delivery company that "[w]hen the cash wage plus tip credit merely equal the minimum wage, any reduction of that amount constitutes underpayment"); *Chan v. Sung Yue Tung Corp.*, 2007 U.S. Dist. Lexis 7770, at *22 (S.D.N.Y. Feb. 1, 2007) (recognizing that any unreimbursed job expenses "necessarily" decrease minimum wage employees' net pay below the minimum wage because those employees only nominally received the exact minimum wage).

## G.    Willfulness

Willfulness is shown when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988). Proof of willfulness extends the FLSA's statute of limitations from two to three years. 29 U.S.C. § 255(a). A delivery driver can show willfulness by such methods as demonstrating (1) a "significant gap between the per-delivery reimbursement and Plaintiffs' actual expense" (*Smith*, 2011 U.S. Dist. LEXIS 76793, at *19), (2) complaints by delivery drivers followed by inaction and / or failures to remedy the problem (*id.*; *Lanktree v. I-70 Towing, LLC*, 2011 U.S. Dist. LEXIS 115570, *20 (W.D. Mo. Oct. 6, 2011)); and (3) access to data needed to determine violations (*Smith*, at *19; *Wass v. NPC Int'l., Inc.*, 2010 U.S. Dist. LEXIS 143474, at

*72-73 (D. Kan. Jun. 24, 2010)). Further, the highly-public proliferation of numerous similar claims against pizza delivery companies since 2009, combined with Singledeck's continued violations during that time, clearly shows willfulness.

Here, Ms. Squires verifies her complaints of under-reimbursements and she shows significant gaps between reimbursements and vehicle expenses (between $0.482 and $0.505 per mile). Moreover, Singledeck had access to all of the data and information supporting this Motion by virtue of its status as Ms. Squires' employer. Thus, its conduct was truly willful.

**H.    FLSA Liquidated Damages**

The FLSA provides that "any employer who violates [the minimum wage or overtime provisions] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "A court may 'eliminate or reduce the award of liquidated damages only if the employer shows both that he acted in good faith and that he had reasonable grounds for believing that his actions did not violate the [FLSA].'" *Renfro v. City of Emporia, Kan*., 948 F.2d 1529, 1540 (10th Cir. 1991). Singledeck has not appeared to contest liability, actual damages, or liquidated damages. Moreover, the same ample evidence supporting willfulness also precludes Singledeck from fulfilling its burden to show "good faith and reasonable grounds" to avoid liquidated damages. Thus, Ms. Squires should recover $14,697.93 for liquidated damages.

**I.    Interest**

Ms. Squires does not seek pre-judgment interest because courts may not award both liquidated damages and pre-judgment interest. *See, e.g., Evans v. Loveland Auto. Invs., Inc.*, 632 Fed. Appx. 496, 499 (10th Cir. 2015); *Kimes v. Alshawy,* 2024 U.S. Dist. LEXIS 103154, at *16-

17 (D. Colo. May 20, 2024), report and recommendation adopted at 2024 U.S. Dist. LEXIS 103151 (D. Colo. June 7, 2024).

Ms. Squires does request post-judgment interest at the rate set forth in 28 U.S.C. § 1961, accruing from the date of entry of a default judgment against Singledeck until that judgment is paid in full. *Kimes*, at *19 (recommending post-judgment interest calculated at the rate set forth in 28 U.S.C. § 1961, accruing from the date of entry a final judgment on this motion until the judgment is paid in full.")

**J.      Attorneys' Fees & Costs**

An award of attorney's fees to a prevailing FLSA plaintiff is "mandatory." *Daniels v. EnCana Oil & Gas (USA), Inc*., 2017 U.S. Dist. LEXIS 120618, at *16 (D. Colo. Aug. 1, 2017) (recognizing the "fact that the FLSA mandates that where the plaintiff prevails the court 'shall allow a reasonable attorney's fee to be paid by the defendant'"); *Ali v. Jerusalem Rest., Inc*., 2015 U.S. Dist. LEXIS 105234, *1 (D. Colo. Aug. 11, 2015) (recognizing that an award of fees to a prevailing plaintiff is "mandatory" under the FLSA) (citing 29 U.S.C. § 216(b)).

To date, Plaintiffs' counsel has spent a total of $22,896.00 worth of uncompensated time specifically pursuing Ms. Squires' claims (as opposed to time spent on the litigation in general). Ex. 29 ¶ 12 & Ex. A; Ex. 30 ¶ 8.

**K.      Disposition Of Remaining Claims**

Plaintiff Robert Knerr and Defendants Boulder BJ, LLC, Arvada BJ, LLC, Westminster BJ, LLC, Lakewood BJ, LLC, Tamiami BJ, LLC and Singledeck, LLC, and Bassam "Sam" Askar entered into a settlement agreement that will dispose of the remaining claims. They agreed to seek settlement approval by an arbitrator, then jointly present the final arbitration award to the court for confirmation under Federal Arbitration Act ("FAA") § 9, 9 U.S.C. § 9. On June 13, 2025,

Arbitrator Jerome A. "Jerry" Diekemper entered an arbitration award approving the settlement. ECF 282-1. The same day, June 13, 2025, the parties submitted the arbitration award to the Court for confirmation. ECF 282. Those parties anticipate that the Court will dismiss the remaining claims as part of the confirmation order.

### III.    <u>CONCLUSION</u>

For all such reasons, the Court should enter judgment awarding Ms. Squires $14,697.93 for actual damages, $14,697.93 for liquidated damages, and $22,896.00 for attorneys' fees.

Respectfully submitted,
**Biller & Kimble, LLC**
Andrew R. Biller (admitted D. Colo.)
Andrew P. Kimble (admitted D. Colo.)
Laura E. Farmwald (admitted D. Colo.)
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*

By: *Mark Potashnick*
**Weinhaus & Potashnick**
Mark Potashnick (Mo. Bar #41315)
(admitted in D. Colo.)
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314)997-9150 ext. 2
markp@wp-attorneys.com

**Livelihood Law, LLC**
David Lichtenstein
12015 East 46th Avenue, Suite 240
Denver, CO 80239
Telephone: (720) 465-6972
drl@livelihoodlaw.com

*Counsel for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing was served on all counsel of record via the

Court's electronic case filing system on the date reflected in the Court's electronic case filing

records.

*/s/ Mark Potashnick*