# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  19-cv- 00799-JKL-MEH

ROBERT KNERR and KARYN SQUIRES, on behalf
of themselves and those similarly situated,

      Plaintiffs,

v.

BOULDER BJ, LLC,
ARVADA BJ, LLC,
WESTMINSTER BJ, LLC,
LAKEWOOD BJ, LLC,
TAMIAMI BJ, LLC
SINGLEDECK, LLC, and
BASSAM "SAM" ASKAR.

      Defendants.

---

## PLAINTIFF KARYN SQUIRES' MOTION FOR
## DEFAULT JUDGMENT UNDER COLORADO LAW

---

Pursuant to footnote 4 of the Court's September 10, 2025 Order (ECF 288 at 5), Plaintiff Karyn Squires ("Ms. Squires") hereby moves the Court for entry of a default judgment against Defendant Singledeck, LLC ("Singledeck") d/b/a "Blackjack Pizza" under the Colorado Minimum Wage of Workers Act ("CMWWA"), C.R.S. § 8-6-101 *et seq.*, and the Colorado Wage Claim Act ("CMWA"), C.R.S. § 8-4-101 *et seq.*[1]

## CERTIFICATION OF CONFERRAL

The undersigned counsel certifies that he has not conferred with Singledeck because of the

---

[1] The Court granted Plaintiff Squires' Motion for Default Judgment on September 10, 2025. ECF 288. However, the Court only granted her a judgment under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and provided Ms. Squires the opportunity to seek a similar judgment under Colorado law by September 24, 2025. ECF 288 at 5-6 n.4. This Motion seeks such default judgment under Colorado law.

nature of this Motion.

## I.    BACKGROUND

1.      Ms. Squires alleges a claim against Singledeck for unpaid minimum wages under the FLSA, a claim for unpaid minimum wages under the CMWWA, and a claim for unpaid wages under the CMWA. ECF 202.

2.      The Court recently issued a default judgment on Ms. Squires' FLSA claim. ECF 288.

3.      Singledeck employed Ms. Squires as a pizza delivery driver from about March 28, 2016 to March 9, 2018 at its Blackjack Pizza restaurant located at 2328 South Academy Boulevard, Colorado Springs, Colorado, 80916. Ex. 1 ¶ 2.

4.      For Colorado minimum wage compliance purposes (explained below), Singledeck paid Ms. Squires at a nominal rate of $8.31 per hour in 2016, $9.30 per hour in 2017, and $10.20 per hour in 2018, including a tip credit (before subtracting unreimbursed vehicle costs). *Id.* ¶ 3.

4.      Singledeck required Ms. Squires to drive her personal vehicles to perform deliveries for Singledeck. *Id.* ¶ 4.

5.      Singledeck required that Ms. Squires personal vehicles be safe, in good working condition, and insured. *Id.* ¶ 5.

6.      Based on Singledeck's requirements, Ms. Squires paid for, and provided, safe, operable, and insured vehicles in good working condition to perform Singledeck's deliveries to its customers. *Id.* ¶ 6.

7.      Ms. Squires alleges that Singledeck reimbursed her less than a reasonable approximation of her vehicle costs incurred in performing her job.  ECF 202.

8.      Ms. Squires' average round-trip delivery distance was at least 8 miles per delivery.

*Id.* ¶ 7.

9.    Singledeck reimbursed Ms. Squires for her vehicle costs at a flat rate of $1.25 per delivery. *Id.* ¶ 8.

10.    From approximately March 28, 2016 to November 11, 2016, Ms. Squires drove her 2006 Acura TL to perform her deliveries for Singledeck. *Id.* ¶ 9.

11.    Ms. Squires contemporaneously recorded a total of 9,929 miles driven in the 2006 Acura TL for Singledeck.  *Id.* ¶ 10; Ex. 2 at 1-5.

12.    Ms. Squires estimates that she drove another 5,000 personal miles during that time. Ex. 1 ¶ 11.

13.    The United States Environmental Protection Agency ("EPA") rated the fuel economy of a *new* 2006 Acura TL at 18 miles per gallon for city driving. Ex. 3.

14.    The city fuel economy rating is most reflective of Ms. Squires' fuel economy on the job because she very rarely drove on a highway to perform deliveries. Ex. 1 ¶ 12.

15.    www.gasbuddy.com shows an average gasoline price of approximately $2.20 per gallon while Ms. Squires drove the 2006 Acura TL for Singledeck.  Ex. 4.

16.    Ms. Squires purchased the 2006 Acura TL in 2011. She received a credit for a trade-in, then paid approximately $450.00 per month through about September 2016 toward a 7 year vehicle loan.  *Id.* ¶ 13.

17.    Ms. Squires acquired the 2006 Acura TL with approximately 45,000 odometer miles.  *Id.* ¶ 14.

18.    The 2006 Acura TL suffered transmission failure in November 2016, leaving it no longer drivable.  *Id.* ¶ 15.

19.    The 2006 Acura TL was repossessed shortly thereafter.  *Id.* ¶ 16.

3

20.     The 2006 Acura TL had approximately 120,000 odometer miles at the time it suffered transmission failure and at the time it was repossessed. *Id.* ¶ 17.

21.     Not counting the value of the trade-in, Ms. Squires paid a total of approximately $27,000.00 for the 2006 Acura TL and associated loan interest (approximately $450.00 per month x approximately 60 monthly payments = approximately $27,000.00). *Id.* ¶ 18.

22.     Per Kelley Blue Book, the 2006 Acura TL's trade-in value was approximately $4,612.00 as of November 11, 2016, presuming the vehicle was in "good" condition. However, the Acura had suffered transmission failure. Ex. 5.

23.     Ms. Squires no longer possesses records of her repair and maintenance costs for the 2006 Acura TL. However, she recalls repairs to parts including the alternator, starter, brakes, brake pads, rotors, battery, spark plugs, headlights, belts and shock absorbers, plus routine vehicle maintenance. Ex. 1 ¶ 19.

24.     A July 21, 2016 study by www.yourmechanic.com estimates an average of $3,900.00 total repair and maintenance costs between the interval of 75,000 and 100,000 odometer miles. Ex. 6 at 2.

25.     Ms. Squires paid approximately $125.00 per month for vehicle insurance while she drove the 2006 Acura TL for Singledeck. Ex. 1 ¶ 20.

26.     Ms. Squires drove a 2013 Toyota Corolla for Singledeck between November 2016 and March 2018. *Id.* ¶ 21.

27.     Ms. Squires contemporaneously recorded a total of 20,096 miles driven in the 2013 Toyota Corolla for Singledeck. *Id.* ¶ 22; Ex. 2 at 5-11.

28.     The EPA rated the 2013 Toyota Corolla at 26 miles per gallon for city driving. Ex. 7.

29. The same www.gasbuddy.com historical price chart shows an average gasoline cost in Colorado Springs of approximately $2.40 per gallon while Ms. Squires drove her 2013 Toyota Corolla for Singledeck. Ex. 4.

30. Ms. Squires acquired the 2013 Toyota Corolla in November 2016 for approximately $15,000.00. Ex. 1 ¶ 23.

31. A CarFax vehicle history report shows that the 2013 Toyota Corolla had approximately 63,000 odometer miles when Ms. Squires purchased it. Ex. 8 at 3.

32. The CarFax vehicle history report also shows that the 2013 Toyota Corolla had about 91,803 odometer miles at the end of Ms. Squires employment with Singledeck. *Id.* at 5.

33. Per Kelley Blue Book, the 2013 Toyota Corolla had a trade-in value of $6,651.00 as of the end of Ms. Squires' employment. Ex. 9.

34. Ms. Squires paid $2,000.00 as a down payment toward the purchase of the 2013 Toyota Corolla. Ex. 1 ¶ 24.

35. Ms. Squires financed the remaining approximately $13,000.00 of the purchase price of the 2013 Toyota Corolla (approximately $15,000.00 purchase price - $2,000.00 trade-in value = approximately $13,000.00 financed) over 72 months. *Id.* ¶ 25.

36. Each monthly payment for the 2013 Toyota Corolla was approximately $253.00. *Id.* at 26.

37. Ms. Squires is only able to produce partial records of her repair and maintenance costs, but not the full set of records and she does not recall all of those repair and maintenance costs. *Id.* ¶27; Ex. 10.

38. Based on the same July 21, 2016 study, www.yourmechanic.com found an average of $3,500.00 total repair and maintenance costs between the interval of 50,000 and 75,000

odometer miles. Ex. 6.

39.     Ms. Squires paid approximately $125.00 per month for vehicle insurance while she drove the 2013 Toyota Corolla for Singledeck. Ex. 1 ¶ 28.

40.     During her employment, Ms. Squires complained to Singledeck about low reimbursements; however, Singledeck failed to increase its reimbursement rates.  *Id.* ¶ 29.

41.     On June 24, 2019, Ms. Squires made a written demand for payment on Singledeck in the form of the First Amended Class and Collective Action Complaint. ECF 38.

42.     That Complaint was served on Singledeck on July 9, 2019. ECF 27501.

43.     Singledeck failed to pay Ms. Squires within 14 days of filing and service of the First Amended Class and Collective Action Complaint. Ex. 1 ¶ 30.

44.     In fact, to date Singledeck has paid Ms. Squires no damages. *Id.*

45.     The Court entered a default against Singledeck on June 17, 2025. ECF 285.

## II.     <u>ARGUMENT</u>

### A.     Default Judgment

 Fed. R. Civ. P. 55(b)(2) provides that the Court may enter a default judgment determining the amount of damages or hold a hearing to determine damages. The facts of the Complaint are accepted as true and the Court must consider whether the unchallenged facts constitute a legitimate cause of action. Charles A Wright, Arthur R. Miller, & Mary K. Kane 10A Fed. Prac. & Proc. Civ. § 2688.1 (4th ed.); *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010).

### C.     Causes Of Action

#### 1.     Colorado Minimum Wage of Workers Act ("CMWWA") Cause of Action

The Colorado Department of Labor and Employment Minimum Wage Orders, 7 CCR 11-3-1, establish the following minimum wage rates:

| Year | Hourly Minimum Wage Rate | Source |
|------|--------------------------|--------|
| 2016 | $ 8.31 | Colo. MW Order No. 32 at 5 |
| 2017 | $ 9.30 | Colo. MW Order No. 33 at 5 |
| 2018 | $10.20 | Colo. MW Order No. 34 at 5 |

C.R.S. § 8-6-18 provides a private cause of action to recover unpaid minimum wages:

An employee receiving less than the legal minimum wage applicable to such employee is entitled to recover in a civil action the unpaid balance of the full amount of such minimum wage, together with reasonable attorney fees and court costs, notwithstanding any agreement to work for a lesser wage.

*Id.*

As to the standard of liability, this District recognizes a CMWWA claim for failure to pay Colorado's minimum wage after subtracting unreimbursed vehicle costs. *See, e.g., Koral v. Inflated Dough, Inc.*, 2014 U.S. Dist. LEXIS 137202, at *12-13 (D. Colo. Sept. 29, 2014); *Darrow v. WKRP Mgmt., LLC*, 2011 U.S. Dist. LEXIS 59388, at *15-16 (D. Colo. June 3, 2011); *Bass v. PJCOMN Acq. Corp.*, 2011 U.S. Dist. LEXIS 58352, at *2, *17-18 (D. Colo. June 1, 2011) (certifying CMWWA class claim alleging that under-reimbursed vehicle costs reduced net wages below the Colorado minimum wage); *see also* Colo. Dept. of Labor Interpretive Notice & Formal Opinion # 16 (Ex. 11) (recognizing that unreimbursed vehicle costs may reduce net wage below the minimum wage in violation of the CMWWA).

Like similar FLSA claims, delivery drivers pay prove such CMWWA claims by estimating their vehicle costs. In *Darrow v. WKRP Mgmt., LLC*, 2011 U.S. Dist. LEXIS 59388 (D. Colo. June 3, 2011), this District held that plaintiff plausibly stated a CMWWA claim by estimating his vehicle costs. *Id.* at *15-16.  In *Koral v. Inflated Dough, Inc.*, 2014 U.S. Dist. LEXIS 137202 (D. Colo. Sept. 29, 2014), this District recognized that "*Darrow* stands for the proposition that a plaintiff may rely on an estimate of his/her actual expenses that is not unreasonable in support of his/her claim." 2014 U.S. Dist. LEXIS 137202, at *7.

The Colorado Court of Appeals holds that a six year statute of limitations applies to

CMWWA claims. *Perez v. By the Rockies, LLC*, 543 P.3d 1054, 1056 (Colo. App. 2023). Although the Colorado Supreme Court agreed to hear that issue, this District recognized that the Colorado Court of Appeals' determination of a six year limitations period in *Perez* applies until the Colorado Supreme Court decides that issue. *McAlister v. LGI Homes Corp., LLC*, 2024 U.S. Dist. LEXIS 240400, at *28-29 (D. Colo. Dec. 6, 2024).

**2.      Colorado Wage Collect Act ("CWCA") Cause of Action**

The CWCA prohibits any "deduction below the applicable minimum wage." C.R.S. § 8-4-105(2).  In interpreting the CWCA, the Colo. Dept. of Labor Interpretive Notice & Formal Opinion # 16 (Ex. 11) recognized that "there is no legal difference" between a deduction from pay and requiring an employee to pay costs of doing business to third parties:

> Employees can't be required to pay, without reimbursement, for items primarily for employer benefit or convenience, because "there is no legal difference between deducting a cost directly from … wages and shifting a cost, which they could not deduct, for the employee to bear."

*Id.* at 3-4 & fn. 8 (following and quoting *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228 1236 (11th Cir. 2002). The Colorado Department of Labor further explains that "there is no legal difference between deducting a cost directly from the worker's wages and shifting a cost, which they could not deduct, for the employee to bear. . . . This rule cannot be avoided by simply requiring employees to make such purchases on their own, either in advance or during the employment." *Id.* at 3-4 fn. 8.

C.R.S. § 8-4-109(1) requires employers to pay all wages due upon termination of employment by the next regular payday at the latest. *Id.* When an employer fails to pay all wages due, the employee can send a written demand for the wages. *Id.* at (3)(a). A filed complaint constitutes a written demand. C.R.S. § 8-4-109(d).

C.R.S. § 8-4-109(3)(b) provides that "if an employer fails or refuses to pay … all earned,

vested, and determinable wages or compensation within fourteen days after a written demand is sent or within fourteen days after a civil action or administrative claim for the wages or compensation is sent to or served on the employer, the employer is liable to the employee or group of similarly situated employees for the amount of the earned, vested, determinable, and unpaid wages or compensation plus an automatic penalty of:

(I)     The greater of two times the amount of the unpaid wages or compensation or one thousand dollars; or

(II)    If the employee can show that the employer's failure or refusal to pay wages or compensation was willful, the greater of three times the amount of the unpaid wages or compensation or three thousand dollars.

*Id.*

The CWCA's statute of limitations is two years for a non-willful violation and three years for a willful violation. C.R.S. § 8-4-122.

**D.     Singledeck, LLC Is Liable To Ms. Squires For CMWWA Violations**

**1.      Ms. Squires' Reasonable Estimates Of Her Vehicle Costs**

Ms. Squires drove a 2006 Acura TL for Singledeck from the beginning of her employment in March 2016 until about November 2016. Then, she drove a 2013 Toyota Corolla for Singledeck from about November 2016 through the end of her employment in March 2018.

**a.      2006 Acura TL**

**1.      Gasoline Cost**

Ms. Squires estimates her fuel economy for the 2006 Acura TL at 18 mile per gallon based on the EPA's original city fuel economy rating. The city fuel economy rating is most reflective of Ms. Squires' fuel economy on the job because she rarely drove on a highway to perform deliveries. Per

a historical Colorado Springs gas price report by www.gasbuddy.com, Ms. Squires estimates that she paid an average of $2.20 per gallon for gasoline during the time she drove her Acura for Singledeck. Thus, her average per-mile gas cost was approximately $0.12 per mile ($2.20 average per-gallon gasoline cost / 18  miles per gallon = $0.12 gas cost per mile).

### 2.    Capital & Interest Cost

Ms. Squires purchased the 2006 Acura TL in 2011. She received a credit for a trade-in, then paid approximately $450.00 for 60 months toward a 7 year note. Those payments were made through about September 2016. The Acura TL suffered transmission failure in November 2016, and it was repossessed shortly thereafter. Not counting the value of the trade-in, Ms. Squires paid a total of approximately $27,000.00 for the 2006 Acura TL and associated loan interest (approximately $450.00 per month x approximately 60 monthly payments = approximately $27,000.00).  The trade in value as of November 11, 2016 was approximately $4,612.00 presuming the vehicle was in "good" condition. However, the Acura suffered transmission failure at that time. She acquired the vehicle with approximately 45,000 odometer miles and it was repossessed with approximately 120,000 odometer miles. Thus, Ms. Squires drove the Acura approximately 75,000 miles over approximately 5 years (approximately 120,000 odometer miles as of transmission failure – approximately 45,000 odometer miles at acquisition = approximately 75,000 total miles driven).  Thus, excluding the value of the trade-in vehicle, Ms. Squires' capital and interest cost per mile totaled approximately $0.299 (($27,000.00 principal and interest payments - $4,612.00 trade-in value as of November 2016 presuming "good" condition) / 75,000 miles = $0.299 per mile capital and interest costs).

### 3.    Repair & Maintenance Cost

Ms. Squires no longer possesses records of her repair and maintenance costs and does not recall

all such costs. Based the July 21, 2016 study by www.yourmechanic.com, Ms. Squires estimates $3,900.00 total repair and maintenance costs between 75,000 and 100,000 odometer miles. That equals repair and maintenance costs of $0.156 per mile ($3,900.00 repair and maintenance cost for 25,000 mile interval between 75,000 and 100,000 odometer miles = $0.156 repair and maintenance cost per mile).

### 4.    Insurance

Ms. Squires paid approximately $125.00 per month for insurance while she drove the 2006 Acura TL for Singledeck. Her contemporaneous work mileage records show 9,929 total work miles while she drove the Acura for Singledeck. Ms. Squires estimates that she also drove the Acura a total of 5,000.00 personal miles in 2016. Thus, Ms. Squires drove the Acura an average of approximately 1,445.21 miles per month that year ((9,929 work miles + 5,000 personal miles) / 10.33 months =  1,445.21 average miles per month). Accordingly, her insurance cost was approximately $0.086 per mile ($125.00 per month insurance cost / average miles 1,445.21 total miles per month = $0.086 per mile insurance cost).

### 5.    Total Cost Per Mile

Adding these per-mile vehicle cost components shows $0.661 total per mile cost of driving:

$0.120 gas

$0.299 capital and interest cost

$0.156 repair & maintenance

$0.086 insurance

$0.661 total per-mile cost

### b.    2013 Toyota Corolla

### 1.    Gasoline Cost

Ms. Squires estimates her fuel economy at 26 mile per gallon based on the EPA's original city

fuel economy rating. Again, Ms. Squires seldom drove on a highway to deliver pizzas for Singledeck. Per the same historical Colorado Springs gas price report by www.gasbuddy.com, Ms. Squires estimates that she paid an average of $2.40 per gallon while she drove for Singledeck. Thus, her average per-mile gas cost was approximately $0.092 per mile ($2.40 average per-gallon gasoline cost / 26 miles per gallon = $0.092 gas cost per mile).

### 2. Depreciation

Ms. Squires acquired the 2013 Toyota Corolla in November 2016 for approximately $15,000.00. At the time, it had approximately 63,000 odometer miles. She stopped driving that vehicle for work about May 27, 2018, when it had approximately 91,803 odometer miles. Per Kelley Blue Book, the 2013 had a trade-in value of $6,651.00 as of the end of Ms. Squires' employment. Thus, her depreciation cost was approximately $0.29 per mile during her employment ((approximately $15,000.00 purchase price – approximately $6,651.00 trade in value) / (approximately 91,803 miles at end of employment – approximately 63,000 miles at acquisition) = $0.29 per mile depreciation cost).

### 3. Interest

Ms. Squires paid a $2,000.00 down payment toward the purchase of the 2013 Toyota Corolla. She agreed to finance the remainder of the purchase price, totaling approximately $13,000.00 (approximately $15,000.00 purchase price - $2,000.00 down payment = approximately $13,000.00 financed) over 72 months. Each monthly payment was approximately $253.00. Thus, her agreed total principle and interest repayments were approximately $18,216.00 (($253.00 monthly payment x 72 months = $18,216.00 total paid in addition to trade-in value). Thus, she agreed to approximately $5,216.00 total interest and finance charges ($18,216.00 installment payments – approximately $13,000.00 purchase price financed = $5,216.00 total interest and finance charges).

Dividing that $5,216.00 interest cost over 72 months yields an average of $72.44 per month average interest and finance charges ($5,216.00 / 72 months = $72.44 average interest and finance charges per month).  Ms. Squires' CarFax report shows that she drove her Toyota an average of approximately 1,694.3 miles per month ((91,803 odometer miles as of March 27, 2018 – approximately 63,000 odometer miles as of November 11, 2016) / 17 months = 1,694.3 average miles per month). Dividing $72.44 average interest and finance cost per month by 1,694.3 average miles driven per month equals a $0.043 per-mile interest and finance cost ($72.44 average interest and finance cost per month / 1,694.3 average miles driven per month = $0.043 per mile interest and finance cost).

### 4.    Repair & Maintenance Cost

Ms. Squires is only able to produce partial records of her repair and maintenance costs, but not the full set of records. She does not recall all of those costs. However, based on the same www.yourmechanic.com 2016 study of vehicle cost per interval of odometer mileage, Ms. Squires estimates that her repair and maintenance costs equal $0.14 per mile. That study shows an average of $3,500.00 repair and maintenance costs between 50,000 and 75,000 odometer miles. Ex. 6. Thus, it shows $0.14 repair and maintenance cost per mile ($3,500.00 / 25,000 miles = $0.14 repair and maintenance cost per mile).

### 5.    Insurance

Ms. Squires paid approximately $125.00 per month for vehicle insurance while she drove the 2013 Toyota Corolla for Singledeck. Dividing Ms. Squires' $125.00 per month insurance cost by 1,694.3 average monthly miles equals $0.073 insurance cost per mile (approximately $125.00 vehicle insurance cost per month / 1,694.3 average miles driven per month = $0.073 insurance cost per mile).

### 6.      Total Cost Per Mile

Adding these per-mile vehicle cost components shows $0.638 total per mile cost of driving:

$0.092 gas

$0.29 depreciation

$0.043 interest

$0.14 repair & maintenance

$0.073   insurance

$0.638 total per-mile cost

Arbitrators have repeatedly accepted the same methods of estimating vehicle costs. *Compare, e.g.,*
*Jones v. PJ Cheese, Inc.*, AAA Case No. 01-20-0015-6701 (Hill-Harvey Apr. 21, 2022) (Ex. 12)
at 2-3 & 5 (arbitration award) *with Jones v. PJ Cheese, Inc.*, AAAA Case No. 01-20-0015-6701
(Ex. 13) (claimant's post-hearing brief) at 10-14; *compare Nelson v. PJ Cheese, Inc.*, AAA Case
No. 01-19-0001-5314 (Kimmell Oct. 20, 2020) (Ex. 14) at 3-12 *with Nelson v. PJ Cheese, Inc.*,
AAA Case No. 01-19-0001-5314 (Ex. 15) (claimant's post-hearing brief) at 15-24; *compare Ralph*
*v. DOS Pizza, LLC.*, AAA Case No. 01-18-0002-2036 (Berger May 5, 2020) (Ex. 16) (interim
award) at 8-13 *with Ralph v. DOS Pizza, LLC*, AAA Case No. 01-18-0002-2036 (Ex. 17)
(claimant's post-hearing brief) at 23-28; *compare Ashton v. PJ Louisiana, Inc.*, AAA Case No. 01-
17-0006-8180 (Pilie Mar. 26, 2019) (Ex. 18) (interim award) at 6-19 *with Ashton v. PJ Louisiana,*
*Inc.*, AAA Case No. 01-17-0006-8180 (claimant's post-hearing brief) (Ex. 19) at 9-14.

### 2.      Singledeck's Reimbursement Rate Was Unreasonable

Ms. Squires shows that Singledeck's reimbursement rate was unreasonable through the
following comparisons. Prior to presenting those comparisons, Plaintiff highlights the fact that
Singledeck reimbursed her based on an average rate of $0.156 per mile ($1.25 per delivery / at

least 8 average round-trip miles per delivery = $0.156 average reimbursement rate per mile), or less.

First, Singledeck's reimbursement rate is unreasonably low compared to the national average cost of driving. Courts recognize that the IRS standard business mileage reimbursement rate (the IRS rate) reflects the national average cost of driving. *See, e.g., Zellagui v. MCD Pizza, Inc.*, 59 F.Supp.3d 712, 716 (E.D. Pa. 2014) ("The IRS figure is a national average of the cost of operating a motor vehicle."); *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal. 4th 554, 565 (same). The IRS rate ranged from $0.535 to $0.545 per mile during Ms. Squires' employment. https://www.irs.gov/tax-professionals/standard-mileage-rates. Thus, Singledeck reimbursed Ms. Squires at a rate equivalent to only approximately 29% of the IRS rate, or the national average cost of driving ($0.156 per mile reimbursement rate / $0.54 per mile IRS rate during employment = approx. 29%). Arbitrator Daniel Williams recognized that "[t]he fact that Respondent only reimbursed [a pizza delivery driver] at approximately half of the IRS rate should have alerted it that its methodology was flawed." *Wallenberg v. PJ Utah, LLC*, AAA Case No. 01-21-0004-6899 (Williams Oct. 20, 2022) (Ex. 20) at 4. By comparison, Singledeck reimbursed Ms. Squires at a rate of less than one-third (1/3) of the IRS rate, or national average cost of driving.

Second, Singledeck's reimbursement rate of $0.156 per mile covered Ms. Squires' estimated $0.156 per-mile repair and maintenance cost for her Accura TL. That means Singledeck's reimbursements left no money to cover her cost of gasoline, vehicle payments, loan interest, insurance, taxes, license or registration. Basically, the same comparison applies to the Toyota Carolla. Singledeck's $0.156 per-mile reimbursement rate barely covered Ms. Squires' $0.14 per mile repair and maintenance cost, leaving less than $0.02 per mile to cover her gasoline, depreciation, interest, insurance, tax, license and registration costs. That is truly unreasonable.

15

Third, arbitrators have consistently found similar, and even substantially higher, per-mile

reimbursement rates unreasonable and insufficient:

| Arbitration Decision | Employer / Expert Reimbursement Rate Rejected | Reasonable Rate Determined By Arbitrator | Per Mile Difference |
|---|---|---|---|
| *Polomo v. GMRG Acq., LLC*, AAA Case No. 01-22-0004-7815 (Tenner June 24, 2024) (Ex. 21) | $0.345 average | IRS Rate ($0.56 to $0.655) | $0.215 to $0.31 |
| *Ridenour v. PJ Louisiana, Inc.*, AAA Case No. 01-21-0004-7137 (Ahern Feb. 16, 2023) (Ex. 22) | $0.20 to $0.32 | IRS Rate ($0.545 to $0.58) | $0.225 to $0.38 |
| *Benoit v. PJ Louisiana, Inc.*, AAA Case No. AAA 01-21-004-8139 (Duval Dec. 13, 2022) (Ex. 23) | $0.24 to $0.35 | IRS Rate ($0.545 to $0.585) | $0.195 to $0.345 |
| *Wallenberg v. PJ Utah, LLC*, AAA Case No. Case No. 01-21-0004-6899 (Williams Oct. 20, 2022) (Ex. 20) | $0.15 to $0.33 | IRS Rate ($0.545 to $0.58) | $0.215 to $0.43 |
| *Jones v. PJ Cheese, Inc.*, AAA Case No. 01-20-0015-6701 (Hill-Harvey Mar. 16, 2022) (Ex. 12) | $0.21 to $0.27 | $0.438 to $0.548. | $0.168 to $0.338 |
| *Rice Jr. v. PJ Cheese, Inc.*, AAA Case No. 01-20-0014-8150 (Bennett Apr. 13, 2022) (Ex. 24) | $0.22 to $0.28 | IRS Rate ($0.545 to $0.585) | $0.265 to $.365 |
| *Pannell v. Parts Authority, Inc.*, AAA Case No. 01-20-0009-6223 (Weinstock Aug. 2, 2021) (Ex. 25) | $0.25 to $0.28 | IRS Rate ($0.535 to $0.58) | $0.255 to $0.33 |
| *Montierth v. Parts Authority, Inc.*, AAA Case No. 01-20-0009-6228 (Guttell Jun. 24, 2021) (Ex. 26) | $0.16 to $0.17 | IRS Rate ($0.535 to $0.545) | $0.365 to $0.385 |
| *Morse v. Parts Authority, Inc.*, AAA Case No. 01-20-0003-8372 (Modica Mar. 29, 2021) (Ex. 27) | $0.32 to $0.36 | AAA Rate ($0.592 to $0.608) | $0.232 to $0.288 |

| *Omelet v. Parts Authority, Inc.*, AAA Case No. 01-20-0003-8239 (Pines Mar. 25, 2021) (Ex. 28) | $020 to $0.30 | IRS Rate ($0.535 to $0.575) | $0.235 to $0.375 |
|---|---|---|---|
| *Nelson v. PJ Cheese, Inc.*, AAA Case No. 01-19-0001-5314 (Kimmell Oct. 20, 2020) (Ex. 14) | $0.27 to $0.30 | $0.38 to $0.428 | $0.08 to $0.158 |
| *Ralph v. DOS Pizza, Inc.*, AAA Case No. 01-18-0002-2036 (Berger May 5, 2020) (Ex. 16) | $0.305 to $0.3525 | No rate specified by arbitrator, but arbitrator found $6,941.32 total un-reimbursed costs | N/A |
| *Ashton v. PJ Louisiana, Inc.*, AAA Case No. 01-17-0006-8180 (Pilie Mar. 26, 2019) (Ex. 18) | $0.175 | $0.48 to $0.51 | $0.305 to $0.335 |
| *In the Matter of An Arbitration*, 2015 AAA Employment LEXIS 221 (Finnigan Aug. 13, 2015) | $0.192 | IRS Rate ($0.505 to $0.55) | $0.313 to $0.358 |
| *In the Matter of An Arbitration*, 2015 AAA Employment LEXIS 237 (Finnigan Aug. 13, 2015) | $0.192 | IRS Rate ($0.505 to $0.55) | $0.313 to $0.358 |

Fourth, in *Darrow*, Judge Arguello found a $1.45 per-delivery reimbursement gap sufficient to state a claim under the FLSA and CMWWA. 2011 U.S. Dist. LEXIS 59388, at *15-16. The reimbursement gap here is much larger (at least 8 average miles per delivery x ($0.661 per mile cost of Accura TL - $0.156 per mile reimbursement rate) = $4.04 under-reimbursement per delivery). Notably, courts recognize that pizza companies "have little room when it comes to reimbursement [when] they are near the minimum wage fault line." *Hatmaker v. PJ Ohio, LLC*, 2019 U.S. Dist. LEXIS 191790, at *13 (S.D. Ohio Nov. 5, 2019).

Similarly, in *Koral v. Inflated Dough, Inc.*, Judge Daniel considered whether delivery drivers alleged facts that support a minimum wage violation in the same claim. 2014 U.S. Dist. LEXIS 137202, at *12 (D. Colo. Sept. 29, 2014). He concluded that "the under-reimbursement, of

an amount between $0.395 and $0.448 per mile driven, supports the existence of a federal and Colorado minimum wage violations." *Id.*, 2014 U.S. Dist. LEXIS 137202, at *12-13. Here, the per-mile under-reimbursements are larger ($0.661 per mile cost of driving Acura TL - $0.156 per mile reimbursement rate = $0.505 per mile difference).

### 3.    Actual Damages

Singledeck reimbursed Ms. Squires based on an average rate of $0.156 per mile ($1.25 per delivery / at least 8 average round-trip miles per delivery = $0.156 average reimbursement rate per mile), or less.

Ms. Squires drove approximately 9,929 work miles in her 2006 Acura TL. Singledeck under-reimbursed her approximately $0.505 per mile while driving the Acura ($0.661 estimated cost per mile - $0.156 reimbursement per mile = $0.505 per mile under-reimbursement). Thus, Singledeck under-reimbursed Ms. Squires a total of approximately $5,011.66 for the cost of driving her Acura (9,929 work miles x $0.505 under-reimbursement per mile = $5,011.66 total under-reimbursement).

Ms. Squires drove approximately 20,096 work miles in her 2013 Toyota Corolla. Singledeck under-reimbursed her approximately $0.482 per mile while driving the Toyota ($0.638 estimated cost per mile - $0.156 reimbursement per mile = $0.482 per mile under-reimbursement). Thus, Singledeck under-reimbursed Ms. Squires a total of approximately $9,686.27 for the cost of driving her Acura (20,096 work miles x $0.482 under-reimbursement per mile = $9,686.27 total under-reimbursement).

The under-reimbursement for both vehicles totals $14,697.93 ($5,011.66 under-reimbursement for Acura + $9,686.27 under-reimbursement for Toyota = $14,697.93 total under-reimbursement for both vehicles).

Singledeck paid Ms. Squires the bare Colorado minimum wage rate per, including a tip credit. *Rodriguez v. GC Pizza, LLC*, 2022 U.S. Dist. LEXIS 170920, at *28-30 (D. Neb. Sept. 21, 2022) (value of tip credit only counted toward full federal minimum wage rate, not wages in excess of federal minimum); *id.* at *2 & 28-30 (applying same rule prior to 2020 update to 29 C.F.R. § 531.59). Thus, Ms. Squires actual damages under the CMWWA total $14,697.93. *Rechtoris v. Dough Mgmt., Inc.,* 2019 U.S. Dist. LEXIS 59617, at *4 (N.D. Ind. Apr. 5, 2019) (recognizing in same claim against a pizza delivery company that "[w]hen the cash wage plus tip credit merely equal the minimum wage, any reduction of that amount constitutes underpayment"); *Chan v. Sung Yue Tung Corp.*, 2007 U.S. Dist. Lexis 7770, at *22 (S.D.N.Y. Feb. 1, 2007) (recognizing that any unreimbursed job expenses "necessarily" decrease minimum wage employees' net pay below the minimum wage because those employees only nominally received the exact minimum wage).

Unlike her FLSA claim with a three-year limitations period, all of Ms. Squires actual damages occurred within the CMWWA's six year limitations period. Thus, the remaining amount due to Ms. Squires for CMWWA actual damages is $1,442.48 ($14,697.93 actual damages - $13,255.45 actual damages awarded in FLSA claim (ECF 288 at 6)) = $1,442.48.

**E.    Singledeck, LLC Is Liable To Ms. Squires For CWCA Violations**

On June 24, 2019, Ms. Squires complied with C.R.S. § 8-4-109(3)(a) by filing a written demand for payment on Singledeck in the form of the First Amended Class and Collective Action Complaint. ECF 38. She served that Complaint on July 9, 2019. ECF 275-1.

Singledeck failed to pay her within 14 days. Ex. 1 ¶ 30. In fact, to date Singledeck has paid Ms. Squires no damages. *Id.* Thus, she is entitled to recover in her CWCA claim.

The Court has already held that the amount of actual damages due within the three-year recovery period is $13,255.45 (ECF 288 at 6) and that the three-year recovery period applies due

to Singledeck's willfulness (*id.* at 4). Thus, pursuant to C.R.S. § 8-4-109(3)(b)(II), Singledeck is liable to Ms. Squires for "the greater of three times the amount of the unpaid wages or compensation or three thousand dollars." Three times $13,255.45 due within the three-year recovery period equals $39,766.35. *See Gomez v. Timberline Custom Bldrs., LLC*, 2025 U.S. Dist. LEXIS 177078, at *17-18 (D. Colo. Sept. 10, 2025) (calculating statutory penalty under CWCA).

## F.    Interest

Ms. Squires requests post-judgment interest at the rate set forth in 28 U.S.C. § 1961, accruing from the date of entry of a default judgment against Singledeck until that judgment is paid in full. *Kimes v. Alshawy,* 2024 U.S. Dist. LEXIS 103154, at *19 (D. Colo. May 20, 2024), report and recommendation adopted at 2024 U.S. Dist. LEXIS 103151 (D. Colo. June 7, 2024).

## G.    Attorneys' Fees & Costs

The CMWWA provides for recovery of "reasonable fees and court costs." C.R.S.  §  8-6-18.  Likewise, the CWCA provides that a court "may award the employee reasonable costs and attorneys fees incurred in the civil action. C.R.S. § 8-4-110(1)(b)(I)

In addition to the time previously spent obtaining the default judgment on the FLSA claim, Ms. Squires counsel spent a total of 3.6 hours researching, drafting and filing this motion. The value of that time is $1,980.00 (3.6 hours x $550.00 = $1,980.00). Ex. 29. The Court previously found that hourly rate reasonable. ECF 288 at 5.

## III.    <u>CONCLUSION</u>

For all such reasons, the Court should enter judgment awarding Ms. Squires $1,442.48 for actual damages under the CMWWA, $39,766.35 for CWCA statutory penalties, and $1,980.00 for attorneys' fees.

Respectfully submitted,
**Biller & Kimble, LLC**
Andrew R. Biller (admitted D. Colo.)
Andrew P. Kimble (admitted D. Colo.)
Laura E. Farmwald (admitted D. Colo.)
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*


By: *Mark Potashnick*
**Weinhaus & Potashnick**
Mark Potashnick (Mo. Bar #41315)
(admitted in D. Colo.)
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314)997-9150 ext. 2
markp@wp-attorneys.com


**Livelihood Law, LLC**
David Lichtenstein
12015 East 46th Avenue, Suite 240
Denver, CO 80239
Telephone: (720) 465-6972
drl@livelihoodlaw.com


*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was served on all counsel of record via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records.

*/s/ Mark Potashnick*